## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RUSSELL L. WININGER, JR. | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02CV747 (WWE) |
| | : | |
| VS. | : | |
| | : | |
| KEVIN SEARLES AND | : | |
| R. LEON CHURCHILL, JR. | : | FEBRUARY 28, 2005 |
| Defendants | : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

The plaintiff, a Police Officer, has sued the defendants, a Police Chief and former Town Manager, for the plaintiff's failures to be promoted to Sergeant in 1999 and 2000. The defendants, Chief Kevin Searles and R. Leon Churchill, have moved for summary judgment in this matter because: 1) there is no evidence that the defendants deprived the plaintiff of any constitutional rights; 2) the defendants are entitled to qualified immunity; 3) the plaintiff is unable to show that, even if his rights were violated by the defendants, that the violations were a result of a policy or custom of the Town; 4) the plaintiff had no liberty or property interest in a promotion, and his due process claim fails; 5) the plaintiff has failed to allege conduct that is sufficiently "extreme" or "outrageous" to sustain a cause of action for intentional infliction of emotional distress; 6) the defendants are entitled to governmental immunity on the tort claim; 7) the plaintiff's claim for punitive damages against the defendants in their official capacities is

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

not permissible pursuant to Supreme Court precedent; and 8) the plaintiff has failed to submit a damage analysis. For these reasons, summary judgment should enter in the defendants' favor as to all counts of the plaintiff's Complaint.

## II.   FACTS

The plaintiff is an Officer for the Town of Windsor's (the "Town") police department (the "Department"). (Deposition of Russell Wininger, October 8, 2004, p. 17 [hereinafter "Pl. Dep., p._."], attached as Exh. A.) He has worked in that capacity since 1995, and is a member of the Windsor Police Department Employees Association (the "Union"). (Pl. Dep., p. 16.) Kevin Searles is the Town's Chief of Police, and has served in that capacity since 1987. (Deposition of Chief Searles, October 5, 2004, p. 10 [hereinafter "Searles Dep., p._."], attached as Exh. B.) R. Leon Churchill was the Town's Town Manager from January 1999 to June 2004. (Deposition of R. Leon Churchill, December 3, 2004, pp. 7-8 [hereinafter "Churchill Dep., p._."], attached as Exh. C.)

While applying to the Department in 1995, the plaintiff interviewed with a member of the Town's Human Resources Department as well as Chief Searles. (Pl. Dep., p. 13.) He also had an oral board interview. (Pl. Dep., p. 13.) The plaintiff testified that he initially was not selected for a position because his polygraph examination revealed a discrepancy with the polygraph examination he had taken earlier with the Coventry Police Department. (Pl. Dep., pp. 13-14.) The plaintiff had told the Coventry Police

- 2 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Department that he had never been fired from a job.  (Pl. Dep., p. 14.)  However, he told

the Windsor Police Department that he had been fired from a restaurant job in Hartford.

(Pl. Dep., p. 14.)  The plaintiff accounts for this discrepancy by arguing that it was

unclear whether he was actually fired or not.  (Pl. Dep., p. 14.)  After being refused the

job with the Department, the plaintiff contacted Chief Searles to discuss his being turned

down for the position.  (Pl. Dep., p. 15.)  The plaintiff testified that the Chief met with him

and, after some discussion, the Chief elected to allow him to proceed with the next

portion of the testing process.  (Pl. Dep., p. 15.)  The plaintiff was hired and began with

the Department in September 1995.  (Pl. Dep., p. 16.)  The plaintiff testified that the

Chief did "the right thing" after he brought the polygraph issue to the Chief's attention.

(Pl. Dep., p. 16.)

### A.    The Plaintiff's History of Poor Judgment and Decision-Making

Since he began with the Department, the plaintiff has had a history of poor

judgment and been the subject of discipline on several occasions.  On August 21, 1996,

the plaintiff received a verbal reprimand from Captain Timothy Triggs for violating the

department's pursuit policy and demonstrating "poor judgment."  (Reprimand, Exh. 1

from plaintiff's deposition, attached as Exh. D; Pl. Dep., p.18.)

On April 8, 1998, the plaintiff received another verbal reprimand from Captain

Triggs for a "poor decision and put[ting] the police department in a very bad light" while

making an illegal seizure of a motor vehicle.  (Reprimand, Exh. 2 from plaintiff's

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

deposition, attached as Exh. E. Pl. Dep., pp. 18-19.)  As a result of this incident, Captain

Triggs removed the plaintiff from his role as Field Training Officer.  (Pl. Dep, p. 69.)  As

a Field Training Officer, the plaintiff had patrolled with new officers, "teaching them,

supervising them, correcting them."  (Searles Dep., p. 55.)

      In a written reprimand dated May 21, 1999, the plaintiff was cited for his

"troubling" judgment in a situation where he left an assigned post without relief or

permission.  (Reprimand, Exh. 3 from plaintiff's deposition, attached as Exh. F; Pl. Dep.,

p. 19.)  On October 13, 1997, the plaintiff was again cited for "poor judgment" for

drawing his weapon when apprehending two motorcyclists for simple trespass.

(Performance Report, Exh. 4 from plaintiff's deposition, attached as Exh. G; Pl. Dep. p.

20.)  On October 21, 1998, the plaintiff was issued a verbal warning  for "failure to

submit an arrest warrant in a timely manner."  (Memorandum, Exh. 5 from plaintiff's

deposition, attached as Exh. H; Pl. Dep., pp. 21-22.)  The plaintiff was cited in "problem"

performance reports for three (3) further incidents from 1996 to 1998.  These incidents

included: sending an email to the Department in violation of a superior's directive; his

failure to turn on an audible siren when passing a vehicle on the way to a burglary alarm

(the performance report stated that he should use "better judgment within the

workplace"), and; improper storage of certain items in a cruiser, in violation of a

superior's directive.  (Performance Reports, Exh. 6 from plaintiff's deposition, attached

as Exh. I.; Pl. Dep., p. 22.)  Notably, these reprimands, warnings and performance

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

reports were given by a variety of supervisors, and none came from Chief Searles or Mr. Churchill.  (See Exhs. D through I.)

The plaintiff's performance reviews in 1998 also reflected his poor judgment and decision-making.  His January 1998 review cited "problems in decision-making and judgment."  (Review, contained in Exh. 8 from plaintiff's deposition, attached as Exh. J; Pl. Dep., p. 37.)  In his April 1998 review, the category of "problem solving/decision making" was scored "below acceptable."  (Exh. J; Pl. Dep., p. 40.)  His July 1998 evaluation stated: "on occasion during this phase Officer Wininger acted in an overzealous nature. The decisions he has made have not been of the best judgment." (Exh. J; Pl. Dep., pp. 42-43.)  The plaintiff's October 15, 1998 stated: "Officer Wininger has made some improvements in the area of decision-making. With this improvement it is still felt that there's work to be done in this area."  (Exh. J; Pl. Dep., pp. 47-48.) Notably, these reviews were completed by a variety of supervisors, none of whom included Chief Searles or Mr. Churchill.  (See Pl. Dep., pp. 37-49.)

**B.    Sergeant Promotions at the Department**

Under the collective bargaining agreement between the Town and the Union (the "CBA"), "the Town reserves the right to determine the method, means and personnel by which the Town's operations are to be conducted."  (Copy of CBA, Exh. C from Chief Searles' deposition, Article I, Section I.I, attached as Exh. K; Pl. Dep., p. 53.)  According to the applicable Town of Windsor Departmental Regulation, candidates for Department

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

promotions are evaluated using a three (3) factor test.  (Copy of Regulation, part of Exhibit B from Searles' deposition, attached as Exh. L; Searles Dep., pp. 44, 64.)  First, candidates are scored on a written examination, which comprises fifty percent (50%) of their overall score.  An oral examination before a panel of approximately ten (10) outside law enforcement officials makes up twenty-five percent (25%) of the score, and an "employment profile" makes up the remaining twenty-five percent (25%).  (Exh. L.)  The employment profile score is arrived at by an examination of the applicant's personnel files maintained within the Department.  (Searles Dep., pp. 40-41.)  The written and oral examinations are scored by an outside consultant, while the employment profile score is computed by the Town's Human Resources department. (Searles Dep., p. 39.)  Based on these three (3) components, the candidates and ranked and notified whether they have received an overall combined passing score of seventy percent (70%).  (Exh. L.)

From the list of those scoring seventy percent (70%) or more, Chief Searles is empowered to recommend any candidate to the Town Manager.  (Exh. L; Searles Dep., pp. 105-06; Churchill Dep., pp. 37-38)  In making this recommendation, the Chief examines the files of the candidates, speaks with their supervisors and other co-workers and arrives at his determination based on those inquiries and his independent knowledge of the candidate.  (Searles Dep., p. 71.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In 1996, Officer Charles Bagley challenged the Department's decision not to promote him to Sergeant.  Out of five (5) candidates, Officer Bagley had the third-highest score on the initial three (3) components.  The two (2) candidates who scored higher than him, as well as the two (2) scoring lower than him, were promoted to Sergeant.  The matter was heard by the State Board of Mediation and Arbitration (the "Board").  The Board held that the above-referenced Departmental Regulation governed the promotional process.  It then examined whether the Chief was required to promote Officer Bagley based upon this Regulation.  The Board held that the decision of which candidate may be chosen from the eligible list of those scoring over seventy percent (70%) "is solely within [the Chief's] discretion."  (Board's written decision recounting the above attached as Exh. M.)

### C.    The 1999 Sergeant Promotion

In the spring of 1999, the Department learned of three (3) upcoming vacancies in the rank of Sergeant.  (Pl. Dep. p. 34.)  After being evaluated by the outside consultant and the HR Department, four (4) candidates received scores of seventy percent (70%) or greater, and were placed on the promotional list.  Officer Todd Spencer received the highest score (82.37).  Officer Shannon Pollick, was second (78.01), the plaintiff was third (77.64), and Officer Tammy Medonis was fourth (73.29).  (Email from Dede Moore, Human Resources Director, Exh. F from Searles Dep., attached as Exh. N; Searles Dep., p. 52.)  Of these possible candidates, Officers Spencer, a White male, Pollick, a

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

White female, and Medonis, a White female, were promoted, while the plaintiff was not. (Pl. Dep., pp. 34-35.)

Officer Medonis was a better candidate because she had a more consistent performance history, lacked the plaintiff's record of "poor judgment," and had none of the "problems in relationships with people in the department" that the plaintiff did. (Searles Dep., p. 55.) Both of these problems reflected upon the plaintiff's leadership ability. (Searles Dep., p. 55.) Chief Searles also knew that the plaintiff had problems directing new recruits in his capacity as Field Training Officer and had consequently been removed from that assignment. (Pl. Dep., p. 69; Searles Dep., p. 55.) This failing reflected upon the plaintiff's "suitability as a sergeant" because it involved "working with somebody, teaching them, supervising them, correcting them." (Searles Dep., p. 55.) Additionally, the plaintiff also had inconsistent levels of activity while with the Department. (Searles Dep., p. 92; Continuation of Deposition of Chief Searles, October 8, 2004, p. 10 [hereinafter "Second Searles Dep., p._."], attached as Exh. O.). Mr. Churchill was also made aware of the plaintiff's history of "uneven performance" and "disciplinary actions." (Churchill Dep., pp. 18-19, 22, 24.) As to the final decision, Mr. Churchill and Chief Searles discussed Chief Searles' recommendations and the candidates' skill sets with regard to "the command structure, ability to lead and command the respect of the rank and file…based upon those specific duties and those

- 8 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

leadership demands." Following this discussion, Mr. Churchill agreed with the Chief's judgment and accepted his recommendations. (Churchill Dep., pp. 37-38.)

After the plaintiff learned he had not been promoted, he claims that he met with Chief Searles who told him that "Captain Triggs felt [his] decision-making was lacking." (Pl. Dep., p. 35.) The plaintiff testified that he had no reason to doubt that this was indeed the reason he was not being promoted. (Pl. Dep., p. 36.) The plaintiff never filed a grievance regarding his failure to be promoted. (Pl. Dep., p. 62.)

After the decision was made to promote Officers Spencer, Pollick and Medonis, Chief Searles installed those officers in order of their seniority, with Officer Spencer filling the first Sergeant vacancy, followed by Officer Medonis and then Officer Pollick. (Searles Dep., p. 60).

### D.    The 2000 Sergeant Promotion

In the fall of 2000, one additional Sergeant vacancy was created. (Pl. Dep., p. 62.) As with the 1999 promotion, the applicants for the position were scored following the initial examinations and employment profiles. Six (6) officers received passing scores of seventy percent (70%) or greater. Officer Philip Mikan received the highest score of 82.58, the plaintiff was next (80.64), William Freeman was fourth (77.55), Michele Neary, a White female, was fifth (76.88), and William Priester was sixth (71.50). (Memorandum from Dede Moore, Human Resources Director, Exh. H from Searles Dep., attached as Exh. P; Searles Dep., p. 72.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Chief Searles evaluated this list of candidates and recommended Officer Freeman, the third-ranking candidate, for promotion. (Searles Dep., pp. 72-73.) Officer Freeman is a White male (Pl. Dep., p. 62), and was promoted over two other White males who scored higher than him (i.e., Officer Mikan and the plaintiff). (Pl. Dep., pp. 62-63.) Chief Searles believed that Officer Freeman best personified the attributes he was looking for: he had the strongest leadership skills of anyone on the list, as well as excellent patrol and policing skills. (Affidavit of Kevin Searles, "Searles Aff.," attached as Exh. Q.) Chief Searles did not select the plaintiff because Officer Freeman was a superior candidate in these regards, and the plaintiff suffered from the judgment, relationship and supervision problems discussed above. (Searles Aff.)

Again, as to the final decision, Mr. Churchill and Chief Searles discussed Chief Searles' recommendations and the candidates' skill sets with regard to "the command structure, ability to lead and command the respect of the rank and file…based upon those specific duties and those leadership demands." (Churchill Dep., pp. 37-38.) Following this discussion, Mr. Churchill agreed with the Chief's judgment and accepted his recommendations. (Churchill Dep., pp. 37-38.)

The plaintiff never filed a grievance regarding his failure to be promoted in 2000. (Pl. Dep., p. 73.) He did, however, discuss with Chief Searles some items of discipline in his file that he felt were unfair and should not have been considered in the promotion. After this discussion, Chief Searles allowed the plaintiff to file grievances regarding

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

some of the past discipline, even though he was well past the period specified under the CBA for doing so.  (Pl. Dep., pp. 67-68.)  Chief Searles was not obligated to make this accommodation, and the plaintiff testified that the Chief was "fair" in this decision to do so.  (Pl. Dep., pp. 68, 73.)

     **E.    The Plaintiff's Complaint**

     In his Complaint dated April 30, 2002 (the "Complaint"), the plaintiff alleges that the actions of the defendants in not promoting him unlawfully denied the plaintiff equal protection under the law and deprived him of liberty and property without due process. (Complaint, First, Second Counts.)  He finally alleges that the defendants intentionally inflicted emotional distress upon him.  (Third Count.)  The plaintiff has sued the defendants both in their individual and official capacities.

**III.    THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The burden is on the moving party to show that no material facts are in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Once the moving party has met its burden, the opposing party must come forward with specific evidence that proves there is a genuine issue of material fact for trial.  Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984); Anderson

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986).  The Second Circuit

has recognized that "[i]t is now beyond cavil that summary judgment may be appropriate

even in the fact-intensive context of discrimination cases … the salutary purpose of

summary judgment – to avoid protracted, expensive and harassing trials – apply no less

to discrimination cases than to … other areas of litigation."  Abo-Brisson v. Delta

Airlines, Inc., 239 F.3d 456, 466 (2d. Cir. 2000)(citing Meiri v. Dacon, 759 F.2d 989, 998

(2d Cir. 1985)).  "Much more recently, the Supreme Court reiterated that trial courts

should not treat discrimination differently from other ultimate questions of fact."  Id.

(citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097

(2000), quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S. Ct. 2742

(1993)).

       In order to overcome a motion for summary judgment, a plaintiff must offer

specific support for his/her claims, not simply conclusory allegations.  See Bickerstaff v.

Vassar College, 196 F.3d 435, 451 (2d Cir. 1999); Martin v. Town of Westport, 329

F.Supp.2d 318 (D.Conn., 2004).  A movant's burden is satisfied if it can point to an

absence of evidence to support an essential element of the non-moving party's claim.

Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

## IV.    ARGUMENT

       The plaintiff's claims fail because there is no evidence that his right to equal

protection was violated by the defendants.  Moreover, the defendants are entitled to

- 12 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

qualified immunity.  Even if the plaintiff's allegations were somehow true, he is unable to prove that his treatment was due to a policy or custom of the Town, and his claim against the defendants in their official capacities therefore fails.  His due process claim fails because he was not deprived of any protected interest.  Also, the plaintiff's allegations do not meet the "extreme and outrageous" standard for proving intentional infliction of emotional distress, and that claim fails as a matter of law.  Moreover, the defendants are immune from liability in their official capacity for this intentional tort.  The plaintiff's claim for punitive damages against the individuals in their official capacity is also clearly without basis in the law, and summary judgment is appropriate with regard to that claim.  Finally, the plaintiff's failure to submit a damage analysis is fatal to his claims.

### A.    The Plaintiff is Unable to Prove an Equal Protection Violation.

It is well established that 42 U.S.C. §1983 does not create substantive rights, but merely provides a remedy for violations of rights created elsewhere.  Baker v. McCollan, 443 U.S. 137, 144, 99 S.Ct. 2689 (1979); Chapman v. Houston Welfare Rights Organization, 411 U.S. 600, 618, 99 S.Ct. 1905 (1979).  Thus, to maintain an action under 42 U.S.C. § 1983, the plaintiff must point to a cognizable federal right.  Ruggiero v. Krzeminski, 928 F.2d 558, 562 (2d Cir. 1991); Ivimey v. Watertown, 30 Conn. App. 742, 753, cert. denied, 226 Conn. 902 (1993).  In his First Count, the plaintiff claims a

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

violation of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.

However, the civil rights claim fails to state a claim upon which relief can be granted.  Therefore, summary judgment should enter in favor of the defendants regarding the claims against them in both their official and individual capacities.

     **1.**    **The Plaintiff is Unable to Demonstrate a Genuine Issue of Material Fact Under a "Class of One" Theory.**

The plaintiff has not plead that he was denied equal protection based upon his membership in any protected class.  Instead, he appears to be alleging a "class of one" equal protection claim.  The Supreme Court has allowed for "equal protection claims brought by a 'class of one,' where the plaintiff alleges that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000).  The Second Circuit has explained that, under Olech, "plaintiffs can recover if they can show that they were treated differently from similarly situated [persons], ... and that there was 'no rational basis for the difference in treatment.'"  Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir.2003) (quoting Olech, 528 U.S. at 564).

The Second Circuit has held that a government body acts without a rational basis only when it acts "with no legitimate reason for its decision."  Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 500 (2d Cir., 2001)(quoting Crowley v. Courville, 76 F.3d 47, 52 (2d Cir.1996)).  To demonstrate a "rational basis," a court need

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

only satisfy itself that "there is any reasonably conceivable state of facts that could provide rational basis" for the decision. Moccio v. New York State Office of Court Admin., 95 F.3d 195, 201 (2d Cir. 1996) (citing Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993)). It is the burden of the plaintiff to demonstrate that no rational basis exists. Chesna v. U.S. Dept. of Defense, 850 F.Supp. 110, 118 (D.Conn.,1994). Moreover, if a plaintiff receives similar treatment as that afforded to similarly situated individuals, he has no claim for equal protection. Tuchman v. State of Conn., 185 F.Supp.2d 169, 173 (D. Conn. 2002); see Giordono v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001). If no similarly situated individuals exist, then the plaintiff has no claim for equal protection. Id.

Here, the plaintiff has admitted that similarly situated individuals were treated in the same way he was: they were denied promotions despite having higher scores on promotional exams than those who were promoted. He admits that the Department has had a "long history" of individuals scoring well on promotional examinations, and being passed over for promotion. (Pl. Dep., pp. 83-84.) Further, he admits that Officer Mikan, the top scoring candidate for the 2000 promotion, was also passed over for promotion; that is, he was treated the same as the plaintiff. (Pl. Dep., p. 63.) The plaintiff cannot claim that any of the candidates promoted over him were similarly situated, because none of those individuals had the extensive and well-documented history of judgment problems that the plaintiff has had. See Shumway v. United Parcel Service, 118 F.3d

- 15 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

60, 64 (2d Cir.1997) (To be similarly situated, the individuals with whom the plaintiff

compares herself must be similarly situated in all material respects).

Clearly, such a history of poor judgment is a rational basis to deny a promotion to

a supervisory position in a paramilitary organization, and the defendants have

articulated legitimate reasons for their promotional decisions.  No reasonable juror could

possibly find that the promotional decisions were made without any rational basis.  In

fact, the plaintiff himself has admitted that he was turned down for promotion because

Chief Searles was told by Captain Triggs that the plaintiff's judgment and decision-

making were lacking.  (Pl. Dep., pp. 35-36.)

Though the plaintiff asserts that he deserved the promotions because of his

score on the promotional exams and the profile, the Department Regulation (which was

held by the State Board of Mediation and Arbitration to govern Department promotions

in Exh. M), is clear that promotions are not decided on the basis of exam scores.

Rather, the exam scores merely decide whether one is eligible for recommendation by

the Chief.  The decision of who among this list to recommend is committed to the

Chief's discretion.  (Exh. L.)  As such, the plaintiff is simply asking the court to review

the correctness of the defendants' promotional choices.  That it clearly cannot do.

Bizzarro v. Miranda, -- F.3d --, 2004 WL 31015, *7 (2d Cir. 2005).  To hold otherwise

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

would encourage "class of one" lawsuits for every government employee denied a promotion.[1]

 This case is similar to another recently decided in this District regarding an Olech "class of one" claim.  In Hayes v. City of Torrington, 2004 WL 1498135 (D.Conn. 2004), a municipal firefighter argued that he should have been promoted to Captain over two (2) firefighters who scored lower on the promotional exam.  The court rejected that claim and granted summary judgment to the City, stating that "discretion [is] given [to] the Board [of Public Safety] by the Collective Bargaining Agreement," thus, statements providing that "the Board members exercised their discretion in selecting for promotion those 'individuals best qualified at that time to assist in strengthening the leadership in the Department and increasing the morale level in the Department" were sufficient to defeat the firefighter's claim.  Id. at *1.

 Similarly, in this case, the plaintiff believes he was entitled to a promotion because of his score on the promotional exams and profile, even though the Chief has discretion to recommend any candidate form the certified list.  Just as in Hayes, Chief Searles used his discretion to recommend the candidate whose skills most closely

---

[1] Further, the plaintiff cannot claim an Equal Protection violation on a theory that he was treated maliciously. He has admitted that the defendants had no animosity toward him:

 Q. "Do you think he has animus towards you? Meaning Mr. Churchill?"
 A. "I don't know one way or the other.  I don't know if there is any animosity."

 Q. ""Do you think the Chief has any animosity towards you?"
 A. "I would hope not."

(Pl. Dep. p. 74.)



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

matched those required by the position in question, and Mr. Churchill accepted that recommendation after reviewing the candidates' qualifications and compatibility with the job requirements.  Therefore, as in <u>Hayes</u>, summary judgment is appropriate on the plaintiff's Equal Protection claim.

> **2.    The Plaintiff Has Not Made a Gender Discrimination Claim, and He is Unable to Demonstrate a Genuine Issue of Material Fact as to Whether Gender Discrimination Occurred in this Case.**

The defendants make clear that there is no allegation of gender discrimination in this case.  At his deposition, the plaintiff admitted that he was not denied any promotions based on his race.  (Pl. Dep., pp. 55, 63.)  He admitted that he was not denied the 2000 promotion based on his gender.  (Pl. Dep., p. 63.)  Though the plaintiff stated in his deposition that female candidates had their seniority considered in the 1999 promotional process while he did not, he admits that "[t]he seniority issue came up after the promotions were made."  (Pl. Dep., p. 57).  As described above, the plaintiff's recollection is accurate in this regard.  Though seniority was not considered to determine who was promoted, it was considered for purposes of installing the new Sergeants in their positions, after they already had been selected for promotion. (Searles Dep., p. 60.)  Therefore, it is clear that the plaintiff is not claiming that the decision not to promote him was based on his gender.

Even if he had somehow alleged a cause of action under 42 U.S.C. § 1983 for gender discrimination, which he has not, his claim would fail as it is unsupported by the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

evidence.  Employment discrimination claims under § 1983 based on gender are

subject to the same burden shifting analysis as claims brought under Title VII.  Sorlucco

v. New York City Police Dep't, 888 F.2d 4, 7 (2d Cir.1989).  Under Title VII, it is unlawful

for employers to discharge, fail to hire, or otherwise discriminate against any individual

on the basis of his or her gender.  42 U.S.C. § 2000e-2(a)(1).  Analysis of a plaintiff's

discrimination claim involves the well-established three-part burden-shifting test of

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 677 (1973).  The first part of the test

requires a plaintiff to establish, by a preponderance of evidence, a prima facie case of

gender discrimination.  Id.  This may be done by showing (i) that he is a member of a

protected class; (ii) that he was competent and was qualified in his job or for the position

to which he applied; (iii) he suffered an adverse employment decision or action; (iv) and

the decision or action occurred under circumstances giving rise to an inference of

discrimination.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120

S.Ct. 2097, 147 L.Ed.2d 105 (2000).  If a plaintiff is able to establish a prima facie case

of discrimination, the burden then shifts to the employer to provide legitimate

nondiscriminatory reasons for the employee's rejection.  McDonnell Douglas, 411 U.S.

at 802.

     If the defendants are able to establish legitimate nondiscriminatory reasons for

the employee's rejection, the plaintiff is given an opportunity to demonstrate that the

defendants' reasons for rejection were pretext for discrimination.  Id. at 804-05.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Importantly, for the case to continue, the plaintiff must produce not simply "some" evidence, but rather, "sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the adverse employment action." Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir.2000).

As the Second Circuit has said in determining whether there exists a genuine issue of material fact for a jury to decide:

> [Courts] must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances. As a jury would be entitled to review the evidence as a whole, courts must not view the evidence in piecemeal fashion in determining whether there is a trial-worthy issue.

(internal quotation, citations marks omitted.)  Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999).

An inference of discrimination may arise if a plaintiff can show that he was treated differently than similarly situated employees of a different gender. Shumway v. United Parcel Service, 118 F.3d 60, 63 (2d Cir.1997); Diggs v. Town of Manchester, 303 F.Supp.2d 163, 176 (D.Conn.2004).  A plaintiff must show that he shared sufficient employment characteristics with the comparator so that they may be similarly situated.

- 20 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

<u>McGuinness</u>, 263 F.3d at 53.  To be similarly situated, the individuals with whom the plaintiff compares himself must be similarly situated in all material respects.  <u>Shumway</u>, 118 F.3d at 64.  An employee is similarly situated in all material respects when an employee has a situation sufficiently similar to the plaintiff's to support at least a minimal inference that the difference in treatment may be attributable to discrimination. <u>McGuinness</u>, 263 F.3d at 54.  What constitutes "all material respects" is judged partly on whether the plaintiff and those with whom he compares himself were subject to the same workplace standards.  <u>Etienne v. Wal-Mart Stores, Inc.</u>, 186 F.Supp.2d 129, 135 (D.Conn.2001) (citing <u>Norville v. Staten Island Univ. Hosp.</u>, 196 F.3d 89, 96 (2d Cir.1999)).

     The only promotion complained of in the Complaint involving a woman being promoted over the plaintiff was when Sergeant Medonis was promoted in 1999. (Complaint, First Count, ¶ 18.)  However, she was not similarly situated to the plaintiff in this case.  As detailed extensively above, she lacked the extensive and well-documented history of poor judgment and decision-making that the plaintiff had.

     In his Complaint, the plaintiff here has "done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his gender]. This is not sufficient." <u>Lizardo v. Denny's, Inc.</u>, 270 F.3d 94, 104 (2d Cir.2001). The plaintiff cannot show that the denial of his promotion in 1999 occurred under circumstances giving rise to an inference of discrimination, and the defendants have

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

articulated legitimate, nondiscriminatory reasons for their decision to recommend and promote other officers.  The plaintiff's history of poor judgment is well-documented.  Again, the plaintiff was the only finalist for the 1999 Sergeant promotion who had a history of judgment problems, problem interactions with Department employees and uneven performance.  This history is documented in written and verbal reprimands.  In contrast, Officer Medonis exhibited none of these infirmities and showed a skill set that matched the position's needs.  It cannot be contested that good judgment and decision-making are prerequisites for a supervisory position in law enforcement.  Again, the plaintiff admitted that Chief Searles' knowledge of his poor judgment led to his not being promoted.  (Pl. Dep., pp. 35-36.)

Michele Neary, a female, scored fourth (4th) out of six (6) candidates on the 2000 promotional examination, and only slightly lower than the successful candidate.  (Exhibit P.)  However, she was not promoted while a male was.  (Pl. Dep., p. 62.)  This is very strong evidence that the defendants did not discriminate in favor of female candidates.

Furthermore, several factors suggest that the defendants did not harbor any discriminatory animus toward the plaintiff.  First, if the Court is to construe the plaintiff's allegations as a gender-discrimination claim, there exists no inference of discrimination because both Chief Searles and Mr. Churchill belong to the same protected class as the plaintiff in that all three are males.  Courts have consistently held that, where the decision-maker is a member of the same protected class as the affected employee,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

claims of discrimination become less plausible.  See, e.g., Toliver v. Community Action Comm'n to Help the Economy, Inc., 613 F.Supp. 1070 (S.D.N.Y.1985), aff'd, 800 F.2d 1128 (2d Cir.) (if decision-maker is in same protected class as plaintiff, claims of discrimination become less plausible); Rikhy v. AMC Computer Corp., 2003 WL 1618529, *5 (S.D.N.Y., Mar 28, 2003)(an inference of discriminatory animus is weakened where the decision-maker is a member of the same protected class as the affected employee); Hauptman v. Concord Fabrics, Inc., 1999 WL 527970, *7 (S.D.N.Y. July 22, 1999)(same); Shabazz-Allah v. Guard Mgmt. Serv., 1999 WL 123641, *4 (S.D.N.Y. Mar.8, 1999)(same); Kendrick v. Penske Transp. Servs., Inc., 1999 WL 450886, at *7 (D.Kan. Apr.13, 1999), aff'd, 220 F.3d 1220 (10th Cir.2000) ("[a] plaintiff may have difficulty establishing discrimination where the alleged discriminatory decision-maker is in the same protected class...."); Desesme v. Montgomery County Gov't, 63 F.Supp.2d, 678, 683 (D.Md.1999), aff'd, 208 F.3d 208 (4th Cir.2000) (fact that decision makers were of the same protected class suggests no discriminatory motivation on the part of employer); Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir.1991)(when the decision makers are in the same protected class as the employee complaining about an adverse employment decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Also, in this case, Chief Searles can successfully assert the "same actor" defense. That defense holds that there is no inference of discrimination when the same individual hires or promotes an individual and later subjects them to an adverse employment action. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); see also Wood v. Sophie Davis School, 2003 WL 22966288, at *4 n. 14 (S.D.N.Y. Dec.15, 2003) ("While Grady involved an individual who hired and fired the plaintiff rather than an actor who hired and failed to promote an individual, the theory behind the same-actor inference is the same."); Alphonse v. State of Connecticut Dept. of Administrative Svcs., 2004 WL 904076 (D.Conn., Apr 21, 2004)("[I]t was [the same individuals] who made the decision to hire [the plaintiff] in 1998 and to promote her and give her a pay raise in 1999, facts that would tend to undercut any claim of discriminatory animus on their part."); Nunnery v. Elgin, Joliet & Eastern Ry. Co. et al., 48 F.Supp.2d 1122, 1133 (N.D.Ind.1999) ("As various courts have recognized, a supervisor who is willing to hire an employee of a certain class is unlikely to deny that employee a promotion because he or she is a member of that class."). In this case, Chief Searles took affirmative steps to assist the plaintiff in his application process, namely, giving the plaintiff an opportunity to explain his polygraph test discrepancy. Even though Chief Searles did not make the final decision, his actions allowed the plaintiff to be hired by the Department. Therefore, it is clear that Chief Searles bore no animus against the plaintiff. Similarly, he allowed the plaintiff to pursue grievances that

- 24 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

were long overdue, demonstrating that he has absolutely no bias against the plaintiff. Accordingly, there is no inference of discrimination in this case against Chief Searles.

Neither can the plaintiff show pretext in this case. To survive summary judgment, a plaintiff must prove the existence of factual issues demonstrating that the defendant's stated reasons were a pretext for discrimination. Meiri v. Dacon, 759 F.2d 989, 997 (2d. Cir. 1985). A plaintiff may prove that defendant's proffered reasons are false by showing they are "so ridden with error that [defendants] could not have relied upon [them]," Lieberman v. Gant, 630 F.2d 60, 65 (2d Cir., 1980), or that the stated reason is "implausible, absurd, or unwise." DeMarco v. Holy Cross High School, 4 F.3d 166, 171 (2d Cir. 1993). Here, no such showing can be made. It is undisputed that the plaintiff possessed a long record of discipline. It cannot be disputed that good judgment and having the respect of other officers are essential attributes for a police sergeant. Therefore, denying a promotion on these grounds cannot be considered to be pretextual.

In fact, Chief Searles' preferential treatment of the plaintiff in the past; i.e., his giving the plaintiff a chance to explain his polygraph test failure and his allowing the plaintiff to grieve his discipline even though the permissible time had elapsed; strongly supports the fact that the lack of judgment and other problems cited by Chief Searles were not pretext, but legitimate, non-discriminatory reasons for not promoting him.

- 25 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Again, the plaintiff admitted that it was Chief Searles' perception that the plaintiff had a record of poor judgment that led to his not being promoted.  (Pl. Dep., pp. 35-36.)

### B.     The Defendants are Entitled to Qualified immunity

Insofar as the defendants are being sued in their individual capacities in this case, those claims fail because the defendants are entitled to qualified immunity. Qualified immunity is more than a simple defense - it is "an entitlement not to stand trial or face the other burdens of litigation,…an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The question of qualified immunity is an issue to be decided as a matter of law by the court. Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990); see Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994) (pure question of law).  In a case with multiple defendants, the court must conduct an individual analysis of the qualified immunity defense as to each defendant.

In Saucier v. Katz, 533 U.S. 194, 200 (2001), the Supreme Court ruled that the "requisites of a qualified immunity defense must be considered in proper sequence." See Ehrlich v. Town of Glastonbury, 348 F.3d 48, 54-55 (2d Cir. 2003).  That sequence requires consideration as a threshold matter the question of whether the officials' conduct violated a constitutional right.  Saucier, 533 U.S. at 201.  "This must be the initial inquiry."  Id.  In setting forth the sequenced approach to qualified immunity, the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Supreme Court "speaks in mandatory terms -- lower courts **must** determine the

violation before engaging in a qualified immunity analysis."  <u>Ehrlich</u>, 348 F.3d at 55

(emphasis in original).

      In determining whether the violation of a constitutional right has been alleged, the

validity of the qualified immunity analysis "depends substantially upon the level of

generality at which the relevant 'legal rule' is to be identified."  <u>Anderson v. Creighton</u>,

483 U.S. 635, 639 (1987); <u>see</u> <u>International Action Ctr. v. United States</u>, 365 F.3d 20,

25 (D.C. Cir. 2004).  Thus, at the first stage of the inquiry, courts must not define the

relevant constitutional right in overly general terms, less they strip the qualified immunity

defense of all meaning.  <u>International Action</u>, 365 F.3d at 25.  For example, it does no

good to allege that a public official violated the right to free speech, and then conclude

that the right to free speech has been "clearly established" in this country since 1791.

<u>Id.</u>  Instead courts must define the right "to a degree that would allow officials

reasonably to anticipate when their conduct may give rise to liability for damages."  <u>Id.</u>

(citation, internal quotations and brackets omitted).

      If a violation is established, "the next, sequential step is to ask whether the right

was clearly established."  <u>Saucier</u>, 533 U.S. at 201.  The Second Circuit recently

described the process of determining whether a right was "clearly established" in

<u>Huminski v. Corsones</u>, 2004 WL 2248175, at *27 (2d Cir. Oct. 7, 2004).  In that case,

the court recognized that a right is "clearly established" if its "'contours…[are] sufficiently

- 27 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

clear that a reasonable official would understand what he is doing violates that right.'" Id. (quoting Anderson, 483 U.S. at 640). "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Id. That is the right must be defined with "reasonable specificity." Id. (citation and internal quotation marks omitted). "In performing this analysis, [courts within the Second Circuit] look to the established law of the Supreme Court and of [the Second Circuit] at the time of the defendants' actions." Id; see Anobile v. Pelligrino, 303 F.3d 107, 125-26 (2d Cir. 2002).

Under the final step of the analysis, even if a plaintiff demonstrates that a defendant violated a clearly established law, a defendant is entitled to qualified immunity if a reasonable official could have believed that his actions were lawful in light of clearly established law and the circumstances confronting him. Poe v. Leonard, 282 F.3d 123, 146 (2d Cir. 2002). A defendant is therefore entitled to summary judgment on qualified immunity grounds, if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officials of reasonable competence could disagree on the legality of the defendant's actions. Id. When the facts are not in dispute, the issue of whether an official acted reasonably should be determined by the court on a motion for summary judgment. Id. A district court errs by "not conducting the legal inquiry necessitated by the defense of qualified immunity, which requires that a court determine

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

whether under the plaintiff's version of the facts, reasonable officers in the defendant's position could disagree as to the legality of his actions."  Id.

As described above, there was no violation of a constitutionally protected right in this case.  However, even if there had been, a reasonable official could have believed that his actions were lawful in light of clearly established law and the circumstances confronting him.  When the plaintiff was asked why he believed that the Chief did not promote him, he responded:  "I believe that a lot of the issues that were in here probably weren't presented to him in the most promising light with respect to me and so he took it on face value from the people that presented it to him that it was true and accurate." (Pl. Dep., p. 73.)  Certainly, given this admission and the plaintiff's well-documented history of judgment-related problems, it was reasonable for Chief Searles to recommend and for Mr. Churchill to accept the recommendation that another officer be promoted to Sergeant ahead of the plaintiff.  Certainly, reasonable officials could disagree as which candidate should have been promoted.  Thus, the defendants are entitled to qualified immunity.

**C.  The Plaintiff Cannot Impute Liability to the Defendants in Their Official Capacities for the Alleged Violations.**

Under Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978), a municipality may only be held liable under 42 U.S.C. § 1983 if a plaintiff proves the existence of: "'(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'"  Zahra v. Town of Southold, 48

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

F.3d 674, 685 (2d Cir.1995) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d

Cir.1983)).  Liability is not available under a theory of respondeat superior. Instead, a

municipality is liable only where "deliberate action attributable to the municipality itself is

the 'moving force' behind the plaintiff's deprivation of federal rights."  Brown v. Board of

Cty. Commissioners, 520 U.S. 397, 400, 117 S.Ct. 1382 (1997).  The plaintiff may

prevail by showing that a final policymaker engaged in a policy or practice of

arbitrariness or discrimination in promotions, that a final policymaker knew of and

ratified the arbitrariness or discrimination by lower level municipal employees or that the

practice of arbitrariness or discrimination in promotions was so widespread as to form a

custom and practice of the City, despite the lack of an official policy of arbitrariness or

discrimination.  See Monell, 436 U.S. at 690-91.  "The essential principles espoused in

Monell apply equally to defendants sued in their official capacities."  Knicrumah v.

Albany City School Dist., 241 F.Supp.2d 199, 209 (N.D.N.Y. 2003) citing Monell, 436

U.S. at 690 n. 3.

        Here, there is no evidence of any policy on the part of the Town to either treat

employees arbitrarily with regard to promotions, or to discriminate against males.  To

the contrary, the Town's charter specifically states that employees shall be hired only

upon the basis of merit:  "All officers and employees in the classified service of the town

as described in section 5-12 of this charter shall be appointed on the basis of merit and

- 30 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

in conformity with recognized principles of public personnel administration." (Charter § 5-2(b), copies of the relevant Charter provisions are attached as Exh. R.)

Moreover, the plaintiff cannot point to the act of a government official with final decision-making authority to give rise to municipal liability. Though the Town Charter grants the Town Manager the discretionary authority to chose employees for the Department,[2] "a grant of discretion is not equivalent to policymaking authority…." <u>Looby v. City of Hartford</u>, 152 F.Supp.2d 181, 189 (D.Conn.,2001) citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 484 n. 12, 106 S.Ct. 1292 (1986). Rather, policy-making authority with respect to Town personnel matters is reserved to the Town Council under the Charter. Charter Section 3-6 states:

> In addition to the powers herein enumerated the council shall have and exercise all powers heretofore conferred upon, possessed by or exercised by the governing body of the town under the general law, and by duly called town meetings except where such powers are expressly reserved to town meetings by this act.

(Exh. R.) Conn.Gen.Stat. § 7-148 outlines and delineates the scope of municipal powers. That section provides that, in addition to all powers granted to municipalities under the constitution and general statutes," any municipality shall have powers over the following: finances and appropriations; property; public services; personnel; public works; sewers; highways; regulatory and police powers; the environment; human rights;

---

[2] Town of Windsor Charter § 5-4(a): "There shall be a police department which shall be subject to such rules, regulations and penalties as the council may adopt and provide. The town manager shall appoint and promote the chief and other members of such department in consultation with the chief of police." (Exh. R.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and miscellaneous other powers.  As such, the Charter and Conn.Gen.Stat. § 7-148 read together demonstrate that power over personnel policy is reserved by the Town Council.  This is entirely consistent the Town's council-manager form of government, which squarely places the Town Council in the policy setting role.  For example, the Town Council approves/ratifies the collective bargaining agreement that governs the promotional process and approves the Town's administrative policies.

Because the plaintiff cannot cite any municipal custom of arbitrary treatment or discrimination in employment practices, he is unable to impute any liability to the Town. Accordingly, the plaintiff cannot prove a municipal violation under 42 U.S.C. § 1983, and his claim fails as against the defendants in their official capacities.

>   **D.    The Plaintiff's Due Process Claim fails Because He Had No Protected Interest in the Promotion.**

In this case, the plaintiff claims that he was entitled to "a fair and meaningful opportunity to be heard" when he was denied the promotions to Sergeant in 1999 and 2000.  (Complaint, Second Count, ¶ 3.)  This claim fails because the plaintiff had no protected interest in these promotions.

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest.  U.S. Const. amend XIV, § 1; <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569-70 & n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, it is well established that "a civil servant seeking a promotion 'does not

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

possess any mandated right to appointment or any other legally protectable interest.'"

McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir.2001) (quoting Cassidy v.

Municipal Civ. Serv. Comm'n, 37 N.Y.2d 526, 529, 375 N.Y.S.2d 300, 337 N.E.2d 752

(1975)); see also Kalkowski v. Town of Hamden, No. 3:99CV1158 (RNC), 2000 WL

435552, at *2 (D.Conn. Mar.13, 2000) (holding that a police officer was not deprived of

a property interest where he was not deprived of any employment opportunity except a

promotion); Looby v. City of Hartford, 152 F.Supp.2d 181, 190 (D.Conn. 2001)("Here,

the City regulations provide that the Chief has discretion to chose which candidates get

promoted from the subset of eligible candidates that is certified to him…Thus, the

plaintiff has no cognizable property right to promotion to captain.")

      Therefore, the plaintiff in this case was due no process under the Fourteenth

Amendment, because he had no cognizable property or other interest in the position he

sought.  Accordingly, summary judgment should enter in favor of the defendants on the

Second Count.

      **E.    The Plaintiff's Claim for Emotional Distress Should be Dismissed.**

      The plaintiff is precluded from asserting this claim at trial because he cannot

point to any evidence demonstrating that the defendants intentionally inflicted emotional

distress on him.  The standard for proving intentional infliction of emotional distress in

Connecticut is a high one, and the plaintiff's claims do not even approach that threshold.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Accordingly, the Third Count of the plaintiff's Complaint is should be decided in the defendants' favor on summary judgment.

In order to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of plaintiff's distress; and (4) the emotional distress sustained by plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id. Additionally, in the employment context, the Connecticut Supreme Court has found, "the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Id. at 254, n. 5 (quoting Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hill v. Pinkerton Security & Investigation Services, Inc., 977 F. Supp. 148, 159 (D. Conn. 1997)(citations omitted, internal quotation marks omitted).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In this case, the plaintiff has admitted, under oath, that the defendants' conduct was, in fact, ***not "outrageous."*** (Pl. Dep., p. 76.) This admission alone is dispositive of his claims, as it negates an essential element of the tort. He also does not claim that either defendant bears any animosity toward him. (Pl. Dep., p. 74.) He has called Mr. Churchill "cordial," and Chief Searles "fair." (PL. Dep., pp. 73, 76.) The only wrong he claims is a failure to be promoted. This is clearly insufficient to withstand a motion for summary judgment. See Hill v. Meta Group, 62 F.Supp.2d 639, 644 D.Conn.,1999)("No case has held that a discriminatory failure to promote, standing alone, amounts to extreme and outrageous behavior.") Thus, his claim plainly fails. Moreover, courts have held that the elements of this tort were not satisfied in cases with far more egregious facts alleged than in the present case.

For example, in Dollard v. Board of Education, 63 Conn.App. 550, 552-53 (2001), the plaintiff alleged that the defendants hypercritically scrutinized every aspect of her work and personal life, publicly admonished her and organized a plan to force her to resign. Despite those allegations, this court determined that the defendants' actions did not constitute outrageous or extreme conduct. Id. at 554. In Appleton v. Board of Education, 254 Conn. 205, 211 (2000), the court did not find extreme or outrageous conduct where the plaintiff was forced to resign, subjected to psychiatric evaluations, escorted off employer's premises by police and subjected to condescending comments made by the employer. See also Carnemolla v. Walsh, 75 Conn.App. 319, 331-32

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(2003)(Court failed to find extreme and outrageous conduct where the plaintiff employee was accused of a embezzling company funds); <u>Bator v. Yale-New Haven Hospital</u>, 73 Conn.App. 576, 577-78 (2002)(Court striking emotional distress claim where employee was allegedly subjected to abusive and disparate treatment, including unfair pay and discipline, where supervisors falsely accused him of endangering a patient's life, suggested that he seek psychiatric help and recommended that he attend anger management classes.)  Accordingly, because the plaintiff's allegations do not, as a matter of law, rise to level of being atrocious or utterly intolerable, summary judgment is appropriate as to the Third Count.[3]

Additionally, the defendants are entitled to government immunity as respects the plaintiff's tort claim against them in their official capacities.  Under Conn. Gen. Stat. § 52-557n(a)(2)(A), a "political subdivision of the state shall not be liable for damages to person or property caused by: Acts or omissions of any employee, officer or agent which constitute…actual malice or wilful misconduct."  "Under Connecticut law, the term 'wilfulness' is synonymous with 'intentional.'"  <u>Pane v. City of Danbury</u>, 267 Conn. 669, 685, 841 A.2d 684 (2004) (Affirming grant of summary judgment for municipality, and

---

[3] 28 USCA § 1367(c) states 'The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--(3) the district court has dismissed all claims over which it has original jurisdiction…"  In this case, it would be unfair to the defendants do so, given the intentional infliction of emotional distress claim's obvious and complete lack of merit and the expenses attendant in defending a second state court action.  <u>See, e.g.</u>, <u>White v. Martin</u>, 23 F.Supp.2d 203, 206 n.6. (D.Conn. 1998)("Having dismissed all of plaintiff's claims upon which our federal jurisdiction is based, we could decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss them on that basis…However, because these claims are asserted against the [same] defendants as well, and because of the apparent lack of merit in the claims, we choose instead to consider the merits of [the defendant's] motion to dismiss these claims.")

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

holding that municipality is immune from liability for the tort of intentional infliction of emotional distress, in accordance with the provisions of § 52-557n(a)(2)(A).)  A lawsuit against a government official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the [government] itself."  Will v. Michigan Dept. of State Police, 492 U.S. 58, 71, 109 S.Ct 2304 (1989).  Therefore, the intentional infliction of emotional distress claims against the defendants in their official capacities are barred by the provisions of Conn. Gen. Stat. 52-557n.  Hadden v. Southern New England Tele. Co., 2004 WL 2039792 (Conn.Super. 2004).

### F.    No Punitive Damages May Be Awarded Against Municipalities or Municipal Employees Sued in Their Official Capacities, and the Plaintiff's Punitive Damages Claim is Therefore Improper.

"Municipalities and municipal officials who are sued in their official capacities are immune from punitive damages under the civil rights laws."  M.O.C.H.A. Soc., Inc. v. City of Buffalo, 199 F.Supp.2d 40, 52 (W.D.N.Y.,2002) citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) and Deepwells Estates Inc. v. Incorporated Village of Head of Harbor, 973 F.Supp. 338, 351 (E.D.N.Y.1997), appeal dismissed, 162 F.3d 1147 (2d Cir.1998); see also Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir. 1997)("[Plaintiff], however, has sued those officers in their official capacity only, so they enjoy the same immunity from punitive damages as the City.")  Accordingly, the plaintiff's claim for

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

punitive damages in this case is improper as against the defendants in their official capacities, and the defendants should be granted summary judgment with regard to that portion of the plaintiff's Prayer for Relief.

### G.    The Plaintiff Has Failed to Submit a Damage Analysis

The 26f Report in this case mandates that damage analyses be provided by any party claiming damages by November 1, 2004.  However, to date, the plaintiff has failed to submit such an analysis.  This too, is grounds for granting summary judgment on the defendants' behalf.

Fed.R.Civ.P. 16(f) provides, in pertinent part: "If a party or party's attorney fails to obey a scheduling or pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)."  "Rule 16 incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery. This should facilitate application of Rule 16(f), since courts and lawyers already are familiar with the Rule 37 standards."  Salahuddin v. Harris, 782 F.2d 1127, 1133 (2nd Cir.1986) (citation omitted).  Rule 37 provides for various sanctions for failing to obey an order to provide discovery, including an "order refusing to allow the disobedient party to support or oppose designated claims or defenses," an "order striking out pleadings or parts thereof" or an order dismissing the action.  Fed.R.Civ.P. 37(b)(2)(B), (C).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The imposition of sanctions under Rule 37 is within the discretion of the district court.

<u>Minotti v. Lensink</u>, 895 F.2d 100, 102-03 (2nd Cir.1990) (citations omitted).  Because

the plaintiff has failed to provide a damage analysis, dismissal is appropriate.

## V.    CONCLUSION

For all of the foregoing reasons, the defendants respectfully request that this

Court grant their Motion for Summary Judgment.


DEFENDANTS,
KEVIN SEARLES AND
R. LEON CHURCHILL, JR.


BY: _____
James M. Sconzo
Fed. Bar No. ct04571 and
Jonathan C. Sterling, Esq.
Fed. Bar No. ct24576
HALLORAN & SAGE LLP
One Goodwin Square
Hartford, CT  06103
Tele: (860) 522-6103
Their Attorneys

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## **CERTIFICATION**

This is to certify that on this 25th day of February, 2005, the foregoing was either mailed, postpaid, or hand-delivered to:

Erin I. O'Neil-Baker, Esq.
41A New London Turnpike
Glastonbury, CT  06033

Erin I. O'Neil- Baker, Esq.
Brewer & O'Neil, LLC
818 Farmington Avenue
West Hartford CT 06119

_____
Jonathan C. Sterling

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105