UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RUSSELL L. WININGER, JR. | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02CV747 (WWE) |
| | : | |
| VS. | : | |
| | : | |
| KEVIN SEARLES AND | : | |
| R. LEON CHURCHILL, JR. | : | FEBRUARY 28, 2005 |
| Defendants | : | |

**LOCAL RULE 56(a)1 STATEMENT**

Pursuant to Local Rule 56(a)1, the defendants, Kevin Searles and R. Leon Churchill, submit the following statement of material facts to which there are no genuine issues to be tried:

1. The plaintiff is an Officer for the Town of Windsor's (the "Town") police department (the "Department"). (Deposition of Russell Wininger, October 8, 2004, p. 17 [hereinafter "Pl. Dep., p.__."], attached as Exh. A.)

2. He has worked in that capacity since 1995, and is a member of the Windsor Police Department Employees Association (the "Union"). (Pl. Dep., p. 16.)

3. Kevin Searles is the Town's Chief of Police, and has served in that capacity since 1987. (Deposition of Chief Searles, October 5, 2004, p. 10 [hereinafter "Searles Dep., p.__."], attached as Exh. B.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

HALLORAN & SAGE LLP

4.R. Leon Churchill was the Town's Town Manager from January 1999 to June 2004. (Deposition of R. Leon Churchill, December 3, 2004, pp. 7-8 [hereinafter "Churchill Dep., p._."], attached as Exh. C.)

5.While applying to the Department in 1995, the plaintiff interviewed with a member of the Town's Human Resources Department as well as Chief Searles. (Pl. Dep., p. 13.)

6.He also had an oral board interview. (Pl. Dep., p. 13.)

7.The plaintiff testified that he initially was not selected for a position because his polygraph examination revealed a discrepancy with the polygraph examination he had taken earlier with the Coventry Police Department. (Pl. Dep., pp. 13-14.)

8.The plaintiff had told the Coventry Police Department that he had never been fired from a job. (Pl. Dep., p. 14.)

9.However, he told the Windsor Police Department that he had been fired from a restaurant job in Hartford. (Pl. Dep., p. 14.)

10.The plaintiff accounts for this discrepancy by arguing that it was unclear whether he was actually fired or not. (Pl. Dep., p. 14.)

11.After being refused the job with the Department, the plaintiff contacted Chief Searles to discuss his being turned down for the position. (Pl. Dep., p. 15.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

12. The plaintiff testified that the Chief met with him and, after some discussion, the Chief elected to allow him to proceed with the next portion of the testing process. (Pl. Dep., p. 15.)

13. The plaintiff was hired and began with the Department in September 1995. (Pl. Dep., p. 16.)

14. The plaintiff testified that the Chief did "the right thing" after he brought the polygraph issue to the Chief's attention. (Pl. Dep., p. 16.)

15. On August 21, 1996, the plaintiff received a verbal reprimand from Captain Timothy Triggs for violating the department's pursuit policy and demonstrating "poor judgment." (Reprimand, Exh. 1 from plaintiff's deposition, attached as Exh. D; Pl. Dep., p.18.)

16. On April 8, 1998, the plaintiff received another verbal reprimand from Captain Triggs for a "poor decision and put[ting] the police department in a very bad light" while making an illegal seizure of a motor vehicle. (Reprimand, Exh. 2 from plaintiff's deposition, attached as Exh. E. Pl. Dep., pp. 18-19.)

17. As a result of this incident, Captain Triggs removed the plaintiff from his role as Field Training Officer. (Pl. Dep, p. 69.)

18. As a Field Training Officer, the plaintiff had patrolled with new officers, "teaching them, supervising them, correcting them." (Searles Dep., p. 55.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

19.	In a written reprimand dated May 21, 1999, the plaintiff was cited for his "troubling" judgment in a situation where he left an assigned post without relief or permission.  (Reprimand, Exh. 3 from plaintiff's deposition, attached as Exh. F; Pl. Dep., p. 19.)

20.	On October 13, 1997, the plaintiff was again cited for "poor judgment" for drawing his weapon when apprehending two motorcyclists for simple trespass.  (Performance Report, Exh. 4 from plaintiff's deposition, attached as Exh. G; Pl. Dep. p. 20.)

21.	On October 21, 1998, the plaintiff was issued a verbal warning for "failure to submit an arrest warrant in a timely manner."  (Memorandum, Exh. 5 from plaintiff's deposition, attached as Exh. H; Pl. Dep., pp. 21-22.)

22.	The plaintiff was cited in "problem" performance reports for three (3) further incidents from 1996 to 1998.  These incidents included: sending an email to the Department in violation of a superior's directive; his failure to turn on an audible siren when passing a vehicle on the way to a burglary alarm (the performance report stated that he should use "better judgment within the workplace"), and; improper storage of certain items in a cruiser, in violation of a superior's directive.  (Performance Reports, Exh. 6 from plaintiff's deposition, attached as Exh. I.; Pl. Dep., p. 22.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

23. The above-mentioned reprimands, warnings and performance reports were given by a variety of supervisors, and none came from Chief Searles or Mr. Churchill. (<u>See</u> Exhs. D through I.)

24. The plaintiff's January 1998 review cited "problems in decision-making and judgment." (Review, contained in Exh. 8 from plaintiff's deposition, attached as Exh. J; Pl. Dep., p. 37.)

25. In his April 1998 review, the category of "problem solving/decision making" was scored "below acceptable." (Exh. J; Pl. Dep., p. 40.)

26. His July 1998 evaluation stated: "on occasion during this phase Officer Wininger acted in an overzealous nature. The decisions he has made have not been of the best judgment." (Exh. J; Pl. Dep., pp. 42-43.)

27. The plaintiff's October 15, 1998 stated: "Officer Wininger has made some improvements in the area of decision-making. With this improvement it is still felt that there's work to be done in this area." (Exh. J; Pl. Dep., pp. 47-48.)

28. These reviews were completed by a variety of supervisors, none of whom included Chief Searles or Mr. Churchill. (<u>See</u> Pl. Dep., pp. 37-49.)

29. Under the collective bargaining agreement between the Town and the Union (the "CBA"), "the Town reserves the right to determine the method, means and personnel by which the Town's operations are to be conducted."

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(Copy of CBA, Exh. C from Chief Searles' deposition, Article I, Section I.I, attached as Exh. K; Pl. Dep., p. 53.)

30. According to the applicable Town of Windsor Departmental Regulation, candidates for Department promotions are evaluated using a three (3) factor test. (Copy of Regulation attached as Exh. L; Searles Dep., pp. 44, 64.)

31. First, candidates are scored on a written examination, which comprises fifty percent (50%) of their overall score. An oral examination before a panel of approximately ten (10) outside law enforcement officials makes up twenty-five percent (25%) of the score, and an "employment profile" makes up the remaining twenty-five percent (25%). (Exh. K.)

32. The employment profile score is arrived at by an examination of the applicant's personnel files maintained within the Department. (Searles Dep., pp. 40-41.)

33. The written and oral examinations are scored by an outside consultant, while the employment profile score is computed by the Town's Human Resources department. (Searles Dep., p. 39.)

34. Based on these three (3) components, the candidates and ranked and notified whether they have received an overall combined passing score of seventy percent (70%). (Exh. L.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

35. From the list of those scoring seventy percent (70%) or more, Chief Searles is empowered to recommend any candidate to the Town Manager. (Exh. L; Searles Dep., pp. 105-06; Churchill Dep., pp. 37-38.)

36. In making this recommendation, the Chief examines the files of the candidates, speaks with their supervisors and other co-workers and arrives at his determination based on those inquiries and his independent knowledge of the candidate. (Searles Dep., p. 71.)

37. In 1996, Officer Charles Bagley challenged the Department's decision not to promote him to Sergeant. (Board's written decision recounting the above attached as Exh. M.)

38. Out of five (5) candidates, Officer Bagley had the third-highest score on the initial three (3) components. (Exh. M.)

39. The two (2) candidates who scored higher than him, as well as the two (2) scoring lower than him, were promoted to Sergeant. (Exh. M.)

40. The matter was heard by the State Board of Mediation and Arbitration (the "Board"). (Exh. M.)

41. The Board held that the above-referenced Departmental Regulation governed the promotional process. (Exh. M.)

42. It then examined whether the Chief was required to promote Officer Bagley based upon this Regulation. (Exh. M.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

43.   The Board held that the decision of which candidate may be chosen from the eligible list of those scoring over seventy percent (70%) "is solely within [the Chief's] discretion." (Exh. M.)

44.   In the spring of 1999, the Department learned of three (3) upcoming vacancies in the rank of Sergeant. (Pl. Dep. p. 34.)

45.   After being evaluated by the outside consultant and the HR Department, four (4) candidates received scores of seventy percent (70%) or greater, and were placed on the promotional list. Officer Todd Spencer received the highest score (82.37). Officer Shannon Pollick, was second (78.01), the plaintiff was third (77.64), and Officer Tammy Medonis was fourth (73.29). (Email from Dede Moore, Human Resources Director, Exh. F from Searles Dep., attached as Exh. N; Searles Dep., p. 52.)

46.   Of these possible candidates, Officers Spencer, a White male, Pollick, a White female, and Medonis, a White female, were promoted, while the plaintiff was not. (Pl. Dep., pp. 34-35.)

47.   Officer Medonis was a better candidate because she had a more consistent performance history, lacked the plaintiff's record of "poor judgment," and had none of the "problems in relationships with people in the department" that the plaintiff did. (Searles Dep., p. 55.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

48.     Both of these problems reflected upon the plaintiff's leadership ability. (Searles Dep., p. 55.)

49.     Chief Searles also knew that the plaintiff had problems directing new recruits in his capacity as Field Training Officer and had consequently been removed from that assignment. (Pl. Dep., p. 69; Searles Dep., p. 55.)

50.     This failing reflected upon the plaintiff's "suitability as a sergeant" because it involved "working with somebody, teaching them, supervising them, correcting them." (Searles Dep., p. 55.)

51.     Additionally, the plaintiff also had inconsistent levels of activity while with the Department. (Searles Dep., p. 92; Continuation of Deposition of Chief Searles, October 8, 2004, p. 10 [hereinafter "Second Searles Dep., p._."], attached as Exh. O.).

52.     Mr. Churchill was aware of the plaintiff's history of "uneven performance" and "disciplinary actions." (Churchill Dep., pp. 18-19, 22, 24.)

53.     As to the final decision, Mr. Churchill and Chief Searles discussed Chief Searles' recommendations and the candidates' skill sets with regard to "the command structure, ability to lead and command the respect of the rank and file…based upon those specific duties and those leadership demands." (Churchill Dep., pp. 37-38.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

54. Following this discussion, Mr. Churchill agreed with the Chief's judgment and accepted his recommendations. (Churchill Dep., pp. 37-38.)

55. After the plaintiff learned he had not been promoted, he claims that he met with Chief Searles who told him that "Captain Triggs felt [his] decision-making was lacking." (Pl. Dep., p. 35.)

56. The plaintiff testified that he had no reason to doubt that this was indeed the reason he was not being promoted. (Pl. Dep., p. 36.)

57. The plaintiff never filed a grievance regarding his failure to be promoted. (Pl. Dep., p. 62.)

58. After the decision was made to promote Officers Spencer, Pollick and Medonis, Chief Searles installed those officers in order of their seniority, with Officer Spencer filling the first Sergeant vacancy, followed by Officer Medonis and then Officer Pollick. (Searles Dep., p. 60).

59. In the fall of 2000, one additional Sergeant vacancy was created. (Pl. Dep., p. 62.)

60. Six (6) officers received passing scores of seventy percent (70%) or greater for the 1999 promotion. Officer Philip Mikan received the highest score of 82.58, the plaintiff was next (80.64), William Freeman was fourth (77.55), Michele Neary, a White female, was fifth (76.88), and William Priester was sixth

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(71.50).  (Email from Dede Moore, Human Resources Director, Exh. H from Searles Dep., attached as Exh. P; Searles Dep., p. 72.)

61.     Chief Searles evaluated this list of candidates and recommended Officer Freeman, the third-ranking candidate, for promotion.  (Searles Dep., pp. 72-73.)

62.     Officer Freeman is a White male (Pl. Dep., p. 62),

63.     Officer Freeman was promoted over two other White males who scored higher than him (i.e., Officer Mikan and the plaintiff).  (Pl. Dep., pp. 62-63.)

64.     Chief Searles believed that Officer Freeman best personified the attributes he was looking for: he had the strongest leadership skills of anyone on the list, as well as excellent patrol and policing skills. (Affidavit of Kevin Searles, "Searles Aff.," attached as Exh. Q.)

65.     Chief Searles did not select the plaintiff because Officer Freeman was a superior candidate in these regards, and the plaintiff suffered from the judgment, relationship and supervision problems discussed above.  (Searles Aff.)

66.     Again, as to the final decision, Mr. Churchill and Chief Searles discussed Chief Searles' recommendations and the candidates' skill sets with regard to "the command structure, ability to lead and command the respect of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

rank and file…based upon those specific duties and those leadership demands." (Churchill Dep., pp. 37-38.)

67. Following this discussion, Mr. Churchill agreed with the Chief's judgment and accepted his recommendations. (Churchill Dep., pp. 37-38.)

68. The plaintiff never filed a grievance regarding his failure to be promoted in 2000. (Pl. Dep., p. 73.)

69. He did, however, discuss with Chief Searles some items of discipline in his file that he felt were unfair and should not have been considered in the promotion. (Pl. Dep., pp. 67-68.)

70. After this discussion, Chief Searles allowed the plaintiff to file grievances regarding some of the past discipline, even though he was well past the period specified under the CBA for doing so. (Pl. Dep., pp. 67-68.)

71. Chief Searles was not obligated to make this accommodation, and the plaintiff testified that the Chief was "fair" in this decision to do so. (Pl. Dep., pp. 68, 73.)

72. In his Complaint dated April 30, 2002 (the "Complaint"), the plaintiff alleges that the actions of the defendants in not promoting him unlawfully denied the plaintiff equal protection under the law and deprived him of liberty and property without due process. (Complaint, First, Second Counts.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

73.     He finally alleges that the defendants intentionally inflicted emotional distress upon him. (Third Count.)

74.     The plaintiff has sued the defendants both in their individual and official capacities. (Complaint, First Count, ¶ 2.)

75.     The plaintiff has admitted that the Department has had a "long history" of individuals scoring well on promotional examinations, and being passed over for promotion. (Pl. Dep., pp. 83-84.)

76.     The plaintiff admits that Officer Mikan, the top scoring candidate for the 2000 promotion, was also passed over for promotion; that is, he was treated the same as the plaintiff. (Pl. Dep., p. 63.)

77.     The plaintiff has admitted that the defendants had no animosity toward him. (Pl. Dep. p. 74.)

78.     At his deposition, the plaintiff admitted that he was not denied any promotions based on his race. (Pl. Dep., pp. 55, 63.)

79.     The plaintiff admitted that he was not denied the 2000 promotion based on his gender. (Pl. Dep., p. 63.)

80.     Though the plaintiff stated in his deposition that female candidates had their seniority considered in the 1999 promotional process while he did not, he admits that "[t]he seniority issue came up after the promotions were made." (Pl. Dep., p. 57).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

81. Though seniority was not considered to determine who was promoted, it was considered for purposes of installing the new Sergeants in their positions, after they already had been selected for promotion. (Searles Dep., p. 60.)

82. Michele Neary, a female, scored fourth (4th) out of six (6) candidates on the 2000 promotional examination, and only slightly lower than the successful candidate. (Exhibit P.)

83. However, she was not promoted while a male was. (Pl. Dep., p. 62.)

84. The Town's charter specifically states that employees shall be hired only upon the basis of merit: "All officers and employees in the classified service of the town as described in section 5-12 of this charter shall be appointed on the basis of merit and in conformity with recognized principles of public personnel administration." (Charter § 5-2(b), copies of the relevant Charter provisions are attached as Exh. R.)

85. Policy-making authority with respect to Town personnel matters is reserved to the Town Council under the Charter. (Exhibit R.)

86. Charter Section 3-6 states: In addition to the powers herein enumerated the council shall have and exercise all powers heretofore conferred upon, possessed by or exercised by the governing body of the town under the

- 14 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

general law, and by duly called town meetings except where such powers are expressly reserved to town meetings by this act. (Exh. R.)

87.     Town of Windsor Charter § 5-4(a) states: "There shall be a police department which shall be subject to such rules, regulations and penalties as the council may adopt and provide. The town manager shall appoint and promote the chief and other members of such department in consultation with the chief of police." (Exh. R.)

88.     The plaintiff has admitted, under oath, that the defendants' conduct was, in fact, not "outrageous." (Pl. Dep., p. 76.)

89.     He also does not claim that either defendant bears any animosity toward him. (Pl. Dep., p. 74.)

90.     He has called Mr. Churchill "cordial," and Chief Searles "fair." (Pl. Dep., pp. 73, 76).

91.     To date, the plaintiff has failed to submit a damage analysis. (Court Record.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

DEFENDANTS,
KEVIN SEARLES AND
R. LEON CHURCHILL, JR.


BY: _____
James M. Sconzo
Fed. Bar No. ct04571 and
Jonathan C. Sterling, Esq.
Fed. Bar No. ct24576
HALLORAN & SAGE LLP
One Goodwin Square
Hartford, CT  06103
Tele: (860) 522-6103
Their Attorneys


## **CERTIFICATION**

This is to certify that on this 25th day of February, 2005, the foregoing was either mailed, postpaid, or hand-delivered to:

Erin I. O'Neil-Baker, Esq.
41A New London Turnpike
Glastonbury, CT  06033

Erin I. O'Neil- Baker, Esq.
Brewer & O'Neil, LLC
818 Farmington Avenue
West Hartford CT 06119


_____
Jonathan C. Sterling

- 16 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105