UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| **RUSSELL L. WININGER, JR.,** | : | CIV. ACTION NO. |
| PLAINTIFF, | : | 3:02 CV 747 (WWE) |
| | : | |
| v. | : | |
| | : | |
| **KEVIN SEARLES AND** | : | |
| **R. LEON CHURCHILL, JR.,** | : | |
| DEFENDANTS. | : | July 20, 2006 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff Russell Wininger initiated this action by filing a complaint on or about April 30, 2002. The instant action arises out of Defendants' decisions not to promote Plaintiff in either 1999 or 2000. The parties engaged in discovery and the Defendants moved for summary judgment of the complaint. After Defendant filed their motion for summary judgment, the parties each changed counsel. In the wake of those changes, Plaintiff was permitted to engage in limited additional discovery. Defendants have since renewed their motion for summary judgment on each count alleged in Plaintiff's Complaint.

In view of the development of the law since the inception of this case, Plaintiff hereby withdraws his Intentional Infliction of Emotional Distress claim. Defendants have not, however, met their burden of proving the absence of any genuine issue of material fact entitling them to judgment as a matter of law on Plaintiff's § 1983 claims. Accordingly, Defendants' Motion for Summary Judgment should be denied.

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

## II. FACTUAL BACKGROUND[1]

Plaintiff was hired by the Windsor Police Department in September 1995. Since he was hired, Plaintiff has received consistently favorable performance reviews. In 1997, Plaintiff received twenty three "good job" performance reports and overwhelmingly positive performance evaluations that recommended him for promotion. Plaintiff also received highly favorable performance reviews in 1998, 1999 and 2000, some of which also note that Plaintiff should be promoted to Sergeant.

The Town of Windsor's personnel policy calls for promotions to be made on the basis of merit and fitness. In that regard, the policy states that mangers have a "moral obligation" to adhere to a process of fair tests and evaluations in connection with making appointments and promotions.

In 1999, Plaintiff sought promotion to Sergeant as suggested in his performance reviews. Although Plaintiff ranked in the middle of the officers on the list of those that received scores making them eligible for promotion, he was by passed in favor of those that scored both higher and lower than him in the promotional examination process.

In 2000, Plaintiff again sought promotion to the rank of Sergeant. Upon completion of the examination process, Plaintiff received the second highest score and was one of two ranked "B-Well Qualified" for promotion. Despite his distinguished performance record and promotional list rank, Plaintiff was by-passed for promotion. In his stead, an officer ranked only "C-Qualified" was selected.

---

[1] Plaintiff provides the following summary background for the Court's convenience. As required by Local Rule 56, Plaintiff sets forth his response to Defendants contentions of undisputed fact and his own contentions of undisputed fact in the accompanying Local Rule 56 Statement. As further required by Local Rule 56, Plaintiff's exhibits and record citations are reflected in his Local Rule 56 Statement.

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

After two failed attempts at promotion, Plaintiff sought an explanation for his failure to be selected. In response, Defendants have claimed that Plaintiff was not selected due to his questionable judgment. That explanation is palpably pretextual.

Throughout 1997, Plaintiff received "superior" ratings with respect to his judgment. While he did have some minor issues in 1998, they were far less severe than other members of the department had experienced.

For instance, prior to 1999, Officer Bernard received two written reprimands. One was for the accidental discharge of a shotgun in the department's armory. The other involved his failure to report damage to his cruiser. Despite these self-evidently serious lapses in judgment, he was promoted to Sergeant.

Also prior to 1999, Officer Francis received a written reprimand for insubordination. Despite this serious transgression, he was promoted to Sergeant.

Also prior to 1999, Officer Freeman received evaluations that called his judgment into question and documented a serous decrease in performance. Despite these problems, and the fat that his promotional exam score placed him a full tier below Plaintiff, he was promoted to Sergeant.

Sergeants Bernard, Francis and Freeman joined a command structure rife with questionable judgment. Indeed, several supervisors had been arrested and/or disciplined for a variety of offenses. For example, Captain Triggs and Sergeant McKee were each involved in drunk driving incidents, but neither lost their command position. Similarly, Sergeant LePore was reprimanded for inappropriate remarks to a female member of the department and for firing his weapon under improper circumstances. Despite this serious and potentially fatal misconduct, he, too, remained a supervisor.

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

Thus, the suggestion that Plaintiff's judgment justifies Defendants' failure to promote him is specious. Rather, it is transparent pretext intended to cover up the Defendants' deliberate disregard of the Town's and Department's Policies, procedures and Regulations regarding promotions. Indeed, Defendant Searles admitted that he gathers and considers a variety of information well beyond that reflected in the promotion eligibility list which information differs from year to year and, apparently, candidate to candidate. Moreover, Defendant Searles admitted that he provided Officer Freeman with a unique interview opportunity prior to the promotion decision, which opportunity he did not provide to Plaintiff.

Under the circumstances, Plaintiff initiated the instant action alleging, *inter alia*, denial of equal protection and denial of due process.

**III.    STANDARD OF REVIEW**

Summary judgment "shall be rendered forthwith" when the pleadings, depositions, answers to interrogatories, filed admissions and affidavits together demonstrate "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The burden lies with the moving party to demonstrate the absence of any genuine issue of material fact; in that connection, all inferences and ambiguities are to be resolved in favor of the nonmoving party. *See, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000); *Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999).

In the context of employment cases, the appropriateness of summary judgment is "a particularly delicate subject." *Feliciano v. Alpha Sector, Inc.,* 2002 WL 1492139, at *5 (S.D.N.Y. July 12, 2002). The Second Circuit has recognized that a "smoking gun" rarely exists in employment actions, and that the challenged conduct "is often accomplished by

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

discreet manipulations and hidden under a veil of self-declared innocence." *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991). A victim, therefore, is "seldom able to prove his or her claim by direct evidence and is usually constrained to rely upon the cumulative weight of circumstantial evidence." *Id*. at 533; *Borrero v. Collins Bldg. Services, Inc.*, 2002 WL 31415511, *7 (S.D.N.Y.2002).

Consequently, courts must be especially cautious in granting the drastic provisional remedy of summary judgment in a case such as this, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference sustaining the plaintiff's claim. *Belfi,* 191 F.3d at 135. Nonetheless, to survive summary judgment in an employment case, a plaintiff "must come forward with at least some credible evidence that the actions of the [defendants] were motivated by [ ... ] animus or ill will." *Grillo v. New York City Transit Auth.,* 291 F.3d 231, 234 (2d Cir.2002).

In that context, the district court must diligently review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. See *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996); *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 721 (2d Cir.1994), *cert. denied*, 513 U.S. 1147 (1995). In ruling on a motion for summary judgment, the court asks not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The ultimate question is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250.

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

**IV.   DISCUSSION**

    **A.   Defendants Denied Plaintiff Equal Protection Under the Law**

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assoc. v. Incorporated Village of Mineola*, 273 F.3d 493, 499 (2d Cir. 2001). Even if they do not belong to a "vulnerable class," the Equal Protection Clause also protects individuals "who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id.*

To establish an equal protection claim under § 1983, a plaintiff must show that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-610 (2d Cir. 1980). As Plaintiff has met his burden of proof as to each element, Defendants' Motion for Summary Judgment as to Plaintiff's Equal Protection claim should be denied.

        1.   Defendants Treated Plaintiff Differently Than Similarly Situated <u>Employees</u>

The United States Supreme Court has held that a public entity violates the Equal Protection Clause of the Constitution by "intentionally treat[ing] [an individual] differently from others similarly situated [if] there is no rational basis for the difference in treatment. . . . The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

Plaintiff and Officers Bernard, Francis and Freeman were undeniably similarly situated employees – they held the same job title and sought the same promotions. However, the serious lapses of judgment reflected in Officers Bernard, Francis and Freeman's records were ignored in connection with their promotions. Conversely, Plaintiff's relatively minor lapses in judgment were the alleged justification for overlooking him for promotion.

In addition the lapses in judgment of several supervisory employees have also been overlooked. Two supervisors' drunk driving escapades have been tolerated. Defendant have also put up with another supervisor's harassment of a female co-worker and unwarranted public discharge of his weapon. Under the circumstances, it is clear that Plaintiff has been treated differently than similarly situated employees.

        2.        Defendants' Disparate Treatment of Plaintiff was Motivated by an <u>Impermissible Reason</u>

Defendants' failure to promote Plaintiff was self-evidently based on an impermissible motive – a malicious, bad faith intent to injure him. Defendants have failed to put forth any evidence explaining that, in light of ***all*** the relevant facts, it was rational to deprive Plaintiff of a promotion. To the contrary, it is clear there was no rational basis for the decision.

Indeed, the department's records and Defendant Searles' testimony reveal two things that render that conclusion inescapable. First, other candidates for promotion to Sergeant during Plaintiff's tenure, as well as other supervisory personnel within the department, have disciplinary records reflecting far more serious transgressions and far poorer judgment than that shown in Plaintiff's record. Try as they might, Defendants' argument that Plaintiff's record of poor judgment is betrayed by the far worse judgment exercised by other supervisors.

7

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

Second, Defendant Searles deliberately went out of his way to ignore the copious commentary supporting Plaintiff's promotion and instead focused on the scant record of so-called poor judgment to justify his decision. Moreover, he afforded officer Freeman a unique pre-selection interview that was not provided to Plaintiff. Accordingly, any suggestion that there was a fair and even handed approach must be rejected; to the contrary, it is manifest that Defendant Searles manipulated the process to justify his selections without regard to the candidates records or the proper process.

Thus, the evidence reveals that Defendants' selective treatment of Plaintiff in connection with the decision not to promote him was not rational and, therefore, unconstitutional. At the very least there is a disputed issue of material fact regarding Defendants' motivation for their conduct. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's Equal Protection should be denied.

### B. Defendants Deprived Plaintiff of Due Process in Violation of the Fourteenth Amendment

Agents of a municipality are limited in their authority by the terms of the town charter. "It has been well established that a city's charter is the fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised . . . . Agents of a city . . . have no source of authority beyond the charter . . . . [T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language." *Fennell v. City of Hartford*, 238 Conn. 809, 813, 681 A.2d 934 (1996) (internal citations and quotations omitted).

8

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

In the instant action, the Town of Windsor personnel policy expressly limits the Town Manager's discretion in connection with promotions. "Appointments, promotions and other actions requiring the application of merit principles shall be based on systematic tests and evaluations; . . . Every employee has a moral obligation and is expected to comply with the spirit and intent of this merit system."

As an initial matter, Defendant Churchill violated this obligation by abandoning his role in the process. Indeed, Defendant Searles admitted that Defendant Churchill merely rubber stamped his recommendations.

While complying with the spirit and intent of the policy with respect to written and oral examinations, Defendant Searles engaged in entirely improper method of compiling and assessing the "Employee Profile" component. Not only did it change from year to year, it changed from employee to employee. As a result, he was able to emphasize or ignore aspects of an employee's background at will. Thus, Defendant Searles was able to selectively refer to portions of Plaintiff's employment record in order to provide an after the fact justification for his decision.

Moreover, Defendant Searles deviated from the appropriate process by affording Officer Freeman a pre-selection interview that was not permitted in the process and not provided to Plaintiff or the other candidates. Under the circumstances, it is clear that Defendant Searles has not complied with the spirit and intent of this merit system. To the contrary, he has effectively abandoned it for the sort of completely discretionary system that merit systems are intended to supplant.

Under the circumstances, Defendants did not afford Plaintiff due process in connection with the selection of candidates for promotion to Sergeant. At the very least, there are issues of

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

fact that warrant denial of summary judgment of this claim. As a result, Defendants' motion should be denied with respect to Plaintiff's due process claim

      **C.    The Defendants Action are Not Entitled to Qualified Immunity**

"When government official abuse their offices, actions for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (internal quotations omitted). Balancing this legal remedy with the necessity of offering government officials some protection, government officials are generally shielded from "civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. "Officials receive this protection if they establish that it was objectively reasonable to believe that their acts did not violate clearly established rights." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993).

Thus, the question becomes whether Defendants reasonably believed that they were permitted under the Fourteenth Amendment to treat Plaintiff differently than other promotion candidates and deprive Plaintiff of promotion without due process. *See Anderson*, 483 U.S. at 641. As set forth *supra*, each of the rights asserted by the Plaintiff were well settled and the Defendants' conduct was in clear violation of those rights. Resolving all factual disputes and inferences in favor of the Plaintiff, Defendants could not have reasonably believed they were permitted under the law to deprive Plaintiff of her rights under the First Amendment and Fourteenth Amendment.

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

Even if the court has any reservations about denying Defendants qualified immunity, the issue is properly left to the jury. Although "immunity ordinarily should be decided by the court, that is true only in cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir.1994). As numerous material facts are genuinely in dispute regarding Plaintiff's claims under the Fourteenth Amendment, the issue of Defendants' qualified immunity should be left to the jury.

**V.   CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment should be denied with respect to Plaintiff's § 1983 claims.

>
> Respectfully submitted,
> The Plaintiff, Russell L. Wininger, Jr.
>
>
> By: _____
> Craig T. Dickinson
> Fed. Bar No.: ct18053
> Madsen, Prestley & Parenteau, LLC
> 44 Capitol Avenue - Second Floor East
> Hartford, CT 06106
> (860) 246-2466
> Attorneys for the Plaintiff

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com

## CERTIFICATION OF SERVICE

      This is to certify that a copy of the foregoing was sent via first class mail on this 21st day of July 2006, to the following counsel of record:

James A. Mongillo
Baio & Associates
15 Elm Street
Rocky Hill, CT 06067

                                              _____
                                              Craig T. Dickinson

PDF created with FinePrint pdfFactory Pro trial version http://www.pdffactory.com