UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


RUSSELL L. WININGER, JR.       :        CIVIL ACTION NO.
                               :        3:02cv747 (WWE)
v.                             :
                               :
KEVIN SEARLES and              :
R. LEON CHURCHILL, JR.         :
                               :

RECOMMENDED RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


I.   INTRODUCTION

On April 30, 2002, Plaintiff, Russell L. Wininger, filed a complaint against Defendants, Kevin Searles and R. Leon Churchill, Jr., alleging: (1) that defendants violated plaintiff's Fourteenth Amendment Right to Equal Protection by denying him a promotion to the position of Sergeant[1] of the Windsor Police Department in violation of 42 U.S.C. § 1983; (2) that defendants violated plaintiff's Fourteenth Amendment Right

---

[1] Count One of plaintiff's Complaint alleges an equal protection claim against Defendants for denying him a promotion to Sergeant in the Windsor Police Department. Counts Two and Three allege due process and common law tort claims against defendants for denying him a promotion to Captain. In plaintiff's prayer for relief, he asks, inter alia, that defendants be ordered to promote plaintiff to the position of Captain. The record reflects that the controversy here involves denial of promotions to Sergeant. For the purposes of this motion, the Court assumes that plaintiff's reference to Captain in the Complaint is in error and the promotions in question relate to becoming a Sergeant in the Windsor Police Department.

to Due Process by depriving him of a promotion to the position of Sergeant in violation of 42 U.S.C. § 1983; and (3) that defendants intentionally inflicted emotional distress upon plaintiff by denying him a promotion to Sergeant.  Plaintiff brings the latter claim pursuant to 28 U.S.C. § 1367, which provides the Court supplemental jurisdiction to hear and decide claims arising under state common law.  [Doc. # 1].

On February 25, 2005, defendants filed a Motion for Summary Judgment.  [Doc. # 55].  In support of the Motion for Summary Judgment, defendants also submitted a Memorandum of Law ["Def. Memo."].  [Doc. # 56].  On July 20, 2006, plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment ["Pl. Memo."] [Doc. # 104] and a Local Rule 56(a)(2) Statement ["Pl. R. 56"] [Doc. # 105].  In his memorandum, plaintiff withdrew his claim for Intentional Infliction of Emotional Distress.[2]  Pl. Memo. at 4.

For the reasons set forth below, defendants' Motion for Summary Judgment is **GRANTED** as to all counts.


II.  <u>FACTS</u>

From the record in this case, the Court finds that the parties have established the following undisputed facts.

_____

[2] Plaintiff shall file a stipulation withdrawing his Intentional Infliction of Emotional Distress claim within twenty (20) days of the entry of this order.  <u>See infra</u>, IV. Conclusion.

A.  Plaintiff's Work History

Plaintiff, Russell Wininger, is an Officer for the Town of Windsor's ["Town"] Police Department ["Department"].  Deposition of Russell Wininger, Oct. 8, 2004, pp. 16-17 ["Pl. Dep., p. __"]. Officer Wininger has worked in that capacity since September 18, 1995 and is a member of the Windsor Police Department Employees Association ["Union"].  Pl. Dep., p. 17; Pl. R. 56 ¶ A.1.2. Defendant Kevin Searles is the Town's Chief of Police and has worked in that capacity since 1987.  Deposition of Kevin Searles, Oct. 5, 2004, p. 10 ["Searles Dep., p. __"].  Defendant R. Leon Churchill was Windsor's Town Manager from January 1999 to June 2004.  Deposition of Ralph Leon Churchill, Dec. 3, 2004, pp. 7-8 ["Churchill Dep., p. __"].

Throughout his tenure with the Department, Officer Wininger's performance has been inconsistent.  Although he has received positive performance evaluations, he has also been the subject of disciplinary actions and has received negative performance evaluations detailing serious judgment and decision-making issues.  The Court's review of the evidence revealed multiple infractions spanning several years.  The following examples illuminate Officer Wininger's judgment and decision-making problems.

On August 21, 1996, Officer Wininger received a verbal reprimand from Captain Timothy Triggs for violating the Department's pursuit policy and for demonstrating "poor judgment" while "involved in a motor vehicle pursuit which ended in a motor vehicle accident." Verbal Reprimand, Aug. 21, 1996, Exh. 1 from Pl. Dep. ["1996 Reprimand"]; Pl. Dep., p. 18. Captain Triggs explained that the Department's pursuit policy must be enforced "because of the liability that the [D]epartment and the Town can be exposed to" during incidents of this nature. Id. At that time, Officer Wininger did not file a grievance with regard to the verbal reprimand. Pl. Dep., p. 18.

On October 13, 1997, Sergeant Deschamps cited Officer Wininger in a Problem Performance Report. Specifically, Sergeant Deschamps found plaintiff used "poor judgment" and "violat[ed] . . . [D]epartment policy regarding [the] use of deadly force" when he drew his weapon while apprehending two motorcyclists for simple trespass. Performance Report, Oct. 13, 1997, Exh. 4 from Pl. Dep. ["Oct. 13, 1997 Perf. Rpt."]; Pl. Dep., pp. 19-20.

On December 15, 1997, Officer Wininger was cited in a Problem Performance Report by Sergeants Francis and Deschamps for a "near collision" that resulted when Officer Wininger failed to activate an audible siren while passing another vehicle en route to a burglary alarm. Performance Report, Dec. 15, 1997, Exh. 6 from Pl. Dep. ["Dec. 1997 Perf. Rpt."]; Pl. Dep., p. 22.

4

Two of these incidents were noted in Officer Wininger's January 15, 1998 Quarterly Evaluation Report.  The report stated that "[d]uring the evaluation period[,] Russell has experienced some problems in decision making and judgment."  Quarterly Evaluation Report, Jan. 15, 1998, Exh. 8 from Pl. Dep. ["Jan. 1998 Eval. Rpt."]; Pl. Dep., p. 37.

On April 8, 1998, Officer Wininger received a verbal reprimand from Captain Triggs for an "improper" search of a vehicle, a flawed "decision making process," and "put[ting] the police department in a very bad light."  Verbal Reprimand, Apr. 8, 1998, Exh. 2 from Pl. Dep. ["1998 Reprimand"]; Pl. Dep., pp. 18-19.  As a result of this incident, Captain Triggs removed Officer Wininger from his role as a Field Training Officer.  Pl. Dep., p. 69.  As a Field Training Officer, Officer Wininger had held a supervisory role over new recruits that, "while much more simple than being a sergeant, still ha[d] the same nature to it, working with somebody, teaching them, supervising them, correcting them."  Searles Dep., p. 55.  Prior to May, 1999, Officer Wininger did not file a grievance with regard to the verbal reprimand.  Pl. Dep., p. 19.

The April 8th incident was cited in Officer Wininger's Quarterly Evaluation Report for that timeframe.  Sergeant Fisher rated Officer Wininger as "below acceptable" with a score of "3" in "Problem Solving/Decision Making" as well as "Knowledge of

Codes of Criminal Procedure—Reflected in Field Performance.[3]"
Quarterly Evaluation Report, Apr. 1998, Exh. 8 from Pl. Dep.
["Apr. 1998 Eval. Rpt."]; Pl. Dep. p. 40.

Officer Wininger's July 15, 1998 Quarterly Evaluation Report
continued to report difficulties in the areas of "Problem
Solving/Decision Making," reflecting a score of "3+," or "below
acceptable."  Quarterly Evaluation Report, Jul. 15, 1998, p. 1,
Exh. 8 from Pl. Dep. ["Jul. 1998 Eval. Rpt."; Pl. Dep., pp.
42-47.  In that report, Sergeant Francis noted that "[o]n
occasion during this phase, Off. Wininger has acted in an
overzealous nature, [and] the decisions he has made have not been
of his best judgment."  Jul. 1998 Eval. Rpt.

Officer Wininger's October 15, 1998 Quarterly Evaluation
Report noted that in the area of Problem Solving/Decision Making,
he had "made some improvements," rating him "4," or "acceptable."
Quarterly Evaluation Report, Oct. 15, 1998, Exh. 8 from Pl. Dep.
["Oct. 1998 Eval. Rpt."]; Pl. Dep., pp. 47-49.  Despite these
limited improvements, plaintiff's supervisors still felt "that
there is work to be done in this area."  Id.; Oct. 1998 Eval.
Rpt.

On October 21, 1998, Officer Wininger received a verbal
reprimand from Captain Triggs for "failure to submit an arrest

_____

[3] Evaluation ratings range from a score of "1" to "7."  A rating
of "4" is considered "acceptable," a "1" is "unacceptable," and a
"7" is "superior."  Jul. 1998 Eval. Rpt.

warrant in a timely manner." Disciplinary Action—Verbal Warning, Oct. 21, 1998, Exh. 5 from Pl. Dep. ["1998 Reprimand"]; Pl. Dep., pp. 21-22. Officer Wininger's actions resulted in a complaint from a citizen. 1998 Reprimand.

On May 21, 1999, Captain Triggs issued a Written Reprimand to Officer Wininger. Written Reprimand, May 21, 1999, Exh. 3 from Pl. Dep. ["1999 Reprimand"]; Pl. Dep., p. 19. In this incident, Officer Wininger left his assigned post to respond to an accident in another town without requesting relief or notifying his superiors. 1999 Reprimand. Captain Triggs described Officer Wininger's judgment in that situation as "troubling," and stated that, "I should not have to tell any officer that permission is required from a supervisor to leave an assigned post." Id. Plaintiff states that he contacted dispatch by radio prior to leaving the site, but a grievance investigation conducted in 2001 determined that it was common practice at the time to notify the on-duty supervisor if a person needed to leave a job early for any reason. Memorandum from Captain Kearse to Kevin Searles, Chief of Police,(Nov. 19, 2001) ["Kearse Memo."], Exh. 4 from Pl. Memo.

In May, 1999, the Department posted a promotional announcement for Sergeant. Pl. Dep., p. 33. Officer Wininger applied for the position and was not selected. Id. at 33-35.

In 2000, Officer Wininger again applied for a promotion to Sergeant. Id. at 62. Officer Wininger was not selected. Id.


B.  The Sergeant Promotional Process

Under the Collective Bargaining Agreement between the Town and the Union ["CBA"], the Town reserves the right to "determine the method, means and personnel by which the Town's operations are to be conducted." CBA, Art. I, Sect. 1.1, Exh. C from Searles Dep.; Pl. Dep., pp. 52-53. The Town's Departmental Regulations specify that candidates for promotion to sergeant are evaluated using a weighted three-factor test: written examination, oral examination, and employment profile. Town of Windsor Departmental Regulation, Sept. 30, 1982 ["Dept. Regs."], § IV.C.2, Exh. B from Searles Dep.; Searles Dep., pp. 44, 64. The written and oral examinations are scored by an outside consultant. The employee profile is scored by a combination of peer review and input from a panel of supervisors. Searles Dep., p. 39. Each component of the test is weighted to arrive at the candidate's overall promotional score. Dept. Regs., § IV.C.2.

The written examination comprises fifty (50) percent of the candidate's overall score. Id. The oral examination, which takes place before an examination panel, comprises twenty-five (25) percent of the overall score. Dept. Regs., §§ IV.C.2, IV.E. The examination panel is provided with copies of the candidate's

8

performance reports for the preceding twenty-four (24) months. Dept. Regs., § IV.C.2.  The remaining twenty-five (25) percent is comprised of the candidate's "employment profile."  Dept. Regs., § IV.C.2.  The employment profile is "[a] comprehensive supervisory evaluation of a candidate's job performance, work habits, work history, and job related attitudes for use as a mechanism in determining a candidate's relative suitability for either promotion or initial employment with the Town."  Dept. Regs., § V.  Candidates who score a combined minimum of seventy (70) percent are ranked from highest to lowest and are placed on a promotional list.  Dept. Regs., § IV.G.

Once candidates are placed on the promotional list, the Chief of Police may recommend any of those candidates to the Town Manager.  Dept. Regs., § IV.H; Searles Dep., pp. 105–06. Although the promotional list is ranked in order from highest to lowest score, the Chief is not obligated to select the candidate with the highest score.  Dept. Regs., § IV.H; Searles Dep., pp. 105–06.  To arrive at his recommendation, Chief Searles testified that he consults with the candidates' supervisors and other co-workers, examines personnel files, and utilizes his independent knowledge of the candidates.  Searles Dep., p. 40.  The Chief submits his recommendation to the Town Manager, who makes the final decision whether or not to appoint a candidate for promotion.  Searles Dep., p. 64; Churchill Dep. pp. 37–38.  As a

9

practical matter, however, the Town Manager typically accepts the
Chief's recommendation.  Searles Dep., p. 64.


    1.  <u>The 1999 Sergeant Promotion</u>

    In the spring of 1999, the Department posted a promotional
announcement for a Sergeant position.  Pl. Dep., p. 33.  At that
time, there were three vacancies, and Officer Wininger applied.
Pl. Dep., p. 34.  After the applications were scored, four (4)
candidates received scores of seventy (70) percent or greater and
were placed on the promotional list.  E-mail from Dede Moore,
Human Resources Director, to Kevin Searles, Chief of Police, (May
20, 1999, 12:09 PM), Exh. H from Searles Dep.  The promotional
list ranked as follows:  (1) Officer Todd Spencer (scoring
82.37); (2) Officer Shannon Pollick (78.01); (3) plaintiff,
Officer Wininger (77.64); and (4) Officer Tammy Medonis (73.29).
<u>Id.</u>  From this list, Officers Spencer, Pollick, and Medonis were
promoted.  Pl. Dep., pp. 34–35.  Officer Wininger was not
promoted.  <u>Id.</u> at 35.

    At his deposition, Officer Wininger testified that Chief
Searles informed him that he would not be promoted because his
"judgment and decision-making [ability were] lacking."  Pl. Dep.,
p. 35.  Chief Searles testified that Officer Wininger was
"subject to dips in performance" and "showed a pattern of using
poor judgment in stressful situations."  Searles Dep., p. 55.

Chief Searles also stated that Officer Wininger "had some problems in relationships with people in the department." Id. Finally, Chief Searles testified that he believed that Officer Wininger's "difficulty in supervising and directing new recruits in his position as a field training officer [the previous year] . . . was a fairly accurate indicator . . . about his suitability as a sergeant." Id.

In contrast, Chief Searles testified that Officer Medonis' record was more "consistent," that she did a "good job" as a patrol officer, was productive, and knew the job of police work. Id. For those reasons, Chief Searles believed that Officer Medonis would be more suitable for a Sergeant position than Officer Wininger. Chief Searles explained that was why he recommended Officer Medonis rather than Officer Wininger. Id.

Town Manager Churchill testified at his deposition that he and Chief Searles discussed the Chief's recommendations in terms of the "skill set of the candidates" and "the ability to lead and command the respect of the rank and file." Churchill Dep., p. 38. Mr. Churchill stated that although Officer Wininger did well on the written and oral exams, he had a history of "uneven performance" and "disciplinary actions." Id. at 24. After his discussion with Chief Searles, Mr. Churchill approved Chief Searles' recommendations for promotion. Id. at 22. Officer

Wininger did not file a grievance regarding his failure to be promoted.  Pl. Dep., p. 62.


   2.  The 2000 Sergeant Promotion

   In the fall of 2000, another Sergeant position became available.  Pl. Dep., p. 62.  Officer Wininger applied for the position.  Id.  Following the application process, six (6) candidates received scores of seventy (70) percent or greater and were placed on the promotional list.  Memorandum from Dede Moore, Human Resources Director, to Town Manager and Police Chief (Nov. 29, 2000), Exh. H from Searles Dep.  The six candidates were: (1) Officer Philip Mikan (scoring 82.58); (2) plaintiff, Officer Wininger (80.64); (3) Officer William Freeman (77.55); (4) Officer Michele Neary (76.88); (5) Officer Gregory Carter (76.53); and (6) Officer William Priester (71.50).  Id.

   After consideration, Chief Searles recommended Officer Freeman, the third-ranking candidate, for promotion.  Searles Dep., pp. 72-73.  Officer Freeman was promoted over two other higher-scoring candidates (Officers Mikan and Wininger).  Pl. Dep., pp. 62-63.  Officer Wininger was not promoted.  Id.

   Chief Searles stated that Officer Freeman "best personified the attributes [he] was looking for:  he had the strongest leadership skills of anyone on the eligible list, as well as excellent patrol and policing skills."  Affidavit of Kevin

12

Searles, Feb. 24, 2005 ["Searles Aff."], Exh. Q from Def. Memo.
Chief Searles did not select Officer Wininger because he believed
that Officer Freeman was the superior candidate.  Id.

Similar to the 1999 promotional process, Chief Searles
discussed his recommendations with Town Manager Churchill.
Churchill Dep., pp. 37-38.  After this discussion, Mr. Churchill
accepted Chief Searles' recommendation, and Officer Freeman was
promoted.  Id.

Officer Wininger did not file a grievance regarding his
failure to be promoted in 2000.  Pl. Dep., p. 73.  Instead, he
met with Chief Searles to discuss why he had not been promoted.
Id. at 64.  At the meeting, they discussed the several incidents
which Chief Searles stated evidenced Officer Wininger's poor
decision-making ability and lack of judgment.  Id. at 65.  After
the discussion, Chief Searles allowed Officer Wininger to file
grievances regarding some of the disciplinary actions against
him, even though the time period for doing so had expired.  Id.
at pp. 67-68.


III.  DISCUSSION

Defendants move for summary judgment on the equal protection
and the due process claims.  On the equal protection claim,
defendants allege that there is no evidence that plaintiff's
right to equal protection was violated because he was not treated

differently from other similarly situated candidates.  On the due process claim, defendants argue that there is no evidence that plaintiff was deprived of any property interest that due process would protect.


A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the record shows that there is no dispute as to any material fact, and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden is on the moving party to show that no material facts are in dispute.  <u>Celotex Corp. v. Caltrett</u>, 477 U.S. 317, 323 (1986).  A genuine issue of material fact is raised if a jury could reasonably find for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When determining whether the record presents genuine issues of material fact, the Court views all inferences and ambiguities in a light most favorable to the non-moving party.  <u>Aldrich v. Randolph Cent. School Dist.</u>, 963 F.2d 520, 523 (2d. Cir. 1992). However, conclusory allegations alone are insufficient to raise a genuine issue of material fact.  The party opposing summary judgment "must bring forward some affirmative indication that his version of events is not fanciful."  <u>Podell v. Citicorp Diners Club, Inc.</u>, 112 F.3d 98, 101 (2d Cir. 1997).  "[T]he mere existence of some alleged factual dispute between the parties

14

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. That a mere "scintilla of evidence" is present in the record is also insufficient to defeat summary judgment. Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003)(citing Anderson, 477 U.S. at 252).

A party may not create a genuine issue of material fact simply by presenting contradictory or unsupported statements. See SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on "allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). "[T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(c)) (emphasis in original). A self-serving affidavit that simply reiterates the conclusory allegations of the complaint without other support is insufficient to raise a genuine issue of material fact. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

Finally, the Second Circuit has recognized that even in fact-specific discrimination cases, summary judgment may be

appropriate.[4]  Abo-Brisson v. Delta Airlines, Inc., 239 F.3d 456,

466 (2d Cir. 2001).  The advantageous purpose of summary

judgment—to avoid "protracted, expensive and harassing trials"

based upon factually unsupported claims—is at least as relevant

in the context of discrimination cases as those involving other

ultimate questions of fact, and discrimination claims should not

be barred from summary judgment to achieve those ends.  Id.; see

Celotex, 477 U.S. at 323-24.


    B.  The Equal Protection Claim

    Plaintiff alleges a "class of one" equal protection claim,

stating that he "was treated differently by the defendants than

[sic] those similarly situated" and that "Defendants have not

expressed any legitimate reason for singling out and

discriminating against [him]."  Compl. Count I, ¶¶ 27, 34.

Specifically, plaintiff claims that he is similarly situated to

---

[4] Plaintiff states that a heightened standard is appropriate when
considering summary judgment in an employment context.  See Pl.
Memo. at § III, citing Belfi v. Prendergast, 191 F.3d 129, 135
(2d Cir. 1999); Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir.
1991).  However, the cases that plaintiff cites refer to Title
VII claims which seek to establish an employer's discriminatory
intent as part of a prima facie case.  They note that careful
scrutiny may be necessary to reveal genuine issues of material
fact surrounding discriminatory intent, making summary judgment
inappropriate.  Belfi, 191 F.3d at 135.  Such claims may be
distinguished from the Equal Protection and Due Process claims
presented here.

the following officers:  (1) Officers Medonis[5] (1999) and Freeman
(2000), who were on the same promotional lists as plaintiff in
1999 and 2000 and were promoted despite ranking lower than him on
the promotional lists and receiving negative comments on
evaluation reports; (2) Officers Bernard and Francis, who were
allegedly promoted to Sergeant despite having reprimands that
reflect lapses in judgment; and (3) supervisory employees,
including Captain Triggs, Sergeant McKee, and Sergeant Lepore,
who retained their command positions despite allegedly exhibiting
serious lapses in judgment.  Pl. Memo., § IV.A.1.1; Pl. R. 56, ¶
B.16.

The Equal Protection Clause requires that the government
treat all similarly situated people alike.  City of Cleburne v.
Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Equal protection
claims may be brought by individuals under a "class of one"
theory of discrimination.  Vill. of Willowbrook v. Olech, 528
U.S. 562, 564 (2000).  The Second Circuit has held that:

> [a]lthough the prototypical equal protection claim
> involves discrimination against people based on their
> membership in a vulnerable class, we have long
> recognized that the equal protection guarantee also

---

[5] Plaintiff's Memorandum in Opposition to Defendants' Motion for
Summary Judgment does not explicitly argue that plaintiff and
Officer Medonis were similarly situated.  Pl. Memo., § IV.A.1.
However, plaintiff's Local Rule 56(a)(2) statement discusses
Officer Medonis' promotion and notes a negative comment on her
April, 1998 performance review.  Pl. R. 56 ¶ B.9.  For
completeness' sake, the Court assumes plaintiff erred in omitting
Officer Medonis in his memorandum.

> extends to individuals who allege no specific class
> membership but are nonetheless subjected to invidious
> discrimination at the hands of governmental officials.

Harlen Assoc. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d

Cir. 2001).

The U.S. Supreme Court defined "class of one" claims in

Village of Willowbrook v. Olech. 528 U.S. at 563. To make out a

class of one equal protection claim, a plaintiff must "allege[]

that [1] []he has been intentionally treated differently from

others similarly situated and [2] that there is no rational basis

for the difference in treatment." Id.

In the context of employment claims under Title VII, the

U.S. Court of Appeals for the Second Circuit has held that for a

plaintiff to be "similarly situated" to others, the plaintiff has

the burden of showing that he and the individuals with whom he

compares himself are "similarly situated in all material

respects." Shumway v. United Parcel Svc., 118 F.3d 60, 64 (2d

Cir. 1997). "[T]he plaintiff must show that []he share[s]

sufficient employment characteristics with the comparator so that

they [can] be considered similarly situated." McGuinness v.

Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). There must be a

"reasonably close resemblance of the facts and circumstances of

the plaintiff's and comparator's cases." Graham v. Long Island

R.R., 230 F.3d 34, 40 (2d Cir. 2000). Where the plaintiff and

comparators are sufficiently distinct that no logical relevance can be found between the two, the plaintiff is not similarly situated to the comparators. McGuinness, 263 F.3d at 53.

The Second Circuit has held that when evaluating equal protection claims, the above Title VII standard may be utilized to determine whether a plaintiff is similarly situated to others. See LaTrieste Restaurant v. Vill. of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999) (applying Shumway to an equal protection claim to determine whether the plaintiff was similarly situated to others); accord Levinnes v. Bannon, 2001 WL 1580278, at *2 (D.Conn. 2001) (concluding that the Shumway standard is appropriate to determine whether a plaintiff is similarly situated to others in an equal protection claim).

In Shumway, a plaintiff sued because she had been asked to resign after violating a company "no fraternization" policy. The plaintiff, however, was unable to identify any employees with whom she was similarly situated. Shumway, 118 F.3d at 64. The Court found that the plaintiff had: violated the company's "no fraternization" policy by engaging in a two-year long relationship with a subordinate; continued her conduct after having been warned by a manager that it violated the company's policy; engaged in sexual harassment; had a complaint filed against her; and lied about it. Id. No other employee cited had engaged in similar patterns of behavior, had similar disciplinary

records, or had worked for the same supervisor. Id. Any other
employee who had violated the "no fraternization" policy and who
had also worked for plaintiff's supervisor had been treated
identically. Like the plaintiff, they were asked to resign. Id.
Furthermore, the plaintiff relied on examples of so-called
similarly situated employees that were unsupported by evidence
other than the plaintiff's testimony, based upon"common
knowledge." Id. The Court found that the plaintiff's self-
serving statements and conclusory allegations, which were
unsupported by admissible evidence, were insufficient to raise a
genuine issue of material fact. Id. at 65. The Court granted
summary judgment because plaintiff had not identified any other
employee with whom she was similarly situated in all material
respects. Id.

        In "class of one" equal protection claims, the Second
Circuit has emphasized that a plaintiff must demonstrate an
**extremely high degree of similarity** between himself and his
comparators to be considered similarly situated. Neilson v.
D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005) (emphasis added).
The Court explained its rationale for a stringent standard:

> In . . . a "class of one" case[, unlike a race- or
> gender-based equal protection claim], the treatment of
> persons in similar circumstances is not offered to
> provide . . . an evidentiary inference of the use of
> particular impermissible factors. . . . [Instead,] **the
> existence of persons in similar circumstances who
> received more favorable treatment than the plaintiff is**

**offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose . . . is all but certain.** The similarity and equal protection inquiries are thus virtually one and the same in such a "class of one" case, and **the standard for determining whether another person's circumstances are similar to the plaintiffs must be . . . *prima facie* identical.**

Id. at 105 (emphasis added) (internal citations omitted).  The Court noted that a finding of "general similarity" was insufficient to demonstrate that the plaintiff and his comparators were similarly situated.

Nielson involved a plaintiff who brought a "class of one" equal protection claim after being suspended for unholstering his weapon during a confrontation with a civilian and lying about it.  Id. at 102-03.  He claimed that he was similarly situated to one officer who had not been formally disciplined after reporting to a weapons test intoxicated, choosing to voluntarily enter an inpatient alcohol treatment program.  Id.  He also claimed that he was similarly situated to an officer who had used a co-worker's credit card without authorization and had been demoted after he repaid the co-worker.  Id.  The jury agreed and entered a verdict for the plaintiff.  Id.

The Second Circuit reversed, stating that the comparators were "too remote" for the plaintiff to be considered similarly situated.  Id. at 106.  The Court stated that rational persons could differ as to whether the offenses committed by the

21

comparators were more or less serious than the plaintiff's offense.  Id.  The Court also distinguished the plaintiff by noting that his comparators had immediately admitted their wrongdoing, rather than lying about it, as had the plaintiff. Id.

1.  Plaintiff is not similarly situated to the officers who were promoted.

In the instant case, plaintiff has failed to identify any officers who were promoted with whom he is similarly situated. None of the officers cited had plaintiff's extensive history of disciplinary actions and judgment problems.

a.  Officers Medonis and Freeman

Plaintiff argues that he is similarly situated to Officers Medonis and Freeman.  Plaintiff contends that Officers Medonis and Freeman were promoted from the same promotional lists that plaintiff qualified for, despite having negative information in their records.  However, he fails to show that he is similarly situated to these officers in all material respects.  Unlike the candidates actually promoted, plaintiff had numerous oral and written reprimands spanning multiple years.  See supra.

Regarding the 1999 promotion, Chief Searles testified that he selected Officer Medonis over plaintiff because Officer Medonis' record was more consistent, that she was not "subject to

[the] dips in performance" that plaintiff had displayed, and that she "knew the job of police work." Searles Dep., p. 55. In contrast, plaintiff had "show[n] a pattern of using poor judgment in stressful situations," had difficulty dealing with other officers, and had been removed from his position of Field Training Officer. Id. Chief Searles considered that last fact "a fairly accurate indicator . . . about his suitability as a Sergeant." Id.

Plaintiff argues that Officer Medonis had "a tendency to make excuses when being corrected on an issue." Pl. Memo., ¶ A.1.47; Tammy Medonis, Quarterly Evaluation Report, Apr., 1998 ["Medonis Eval. Rpt."], Exh. 11 from Pl. R. 56. However, this single criticism does not equate to plaintiff's extensive history of reprimands and sub-par evaluations. Plaintiff provided no additional negative information concerning Officer Medonis. The evaluation report cited by plaintiff contains no ratings below acceptable. Medonis Eval. Rpt. Finally, the comment occurred in April, 1998, over a full year prior to the May, 1999 promotional process.

Likewise, in 2000, plaintiff and Freeman cannot be considered similarly situated because of differences in their disciplinary and performance records. Chief Searles testified that Officer Freeman had strong leadership skills, along with patrol and policing skills, which Chief Searles believed made him

the best candidate for the position.  In contrast, plaintiff's inability to perform at an acceptable level in the Field Training Officer position raised serious doubts as to his leadership ability.  Furthermore, plaintiff introduced no evidence to show that he had overcome his problems with decision-making and judgment since being denied a promotion the previous year.

Plaintiff argues that two of Officer Freeman's performance evaluations indicate "serious lapses in judgment" that "were ignored in connection with [his] promotion."  Pl. Memo., ¶ A.1.  Specifically, plaintiff cites a statement in Officer Freeman's June, 1997 quarterly evaluation: "Sometimes in his eagerness to do the best job possible, he makes mental mistakes . . . ."  Id.; William Freeman, Quarterly Evaluation Report, Jul. 15, 1997 ["Freeman 1997 Eval. Rpt."], Exh. 10 from Pl. R. 56.  Officer Freeman also received a comment on his August, 1998 quarterly evaluation that stated, "Off. Freeman has shown some surprising decreases in performance areas. . . ."  Pl. R. 56 ¶ A.1.27; William Freeman, Quarterly Evaluation Report, Aug. 15, 1998 ["Freeman 1998 Eval. Rpt."], Exh. 10 from Pl. R. 56.

Plaintiff fails to note that the "mental mistake" comment, in its entirety, reads "Sometimes in his eagerness to do the best job possible, he makes mental mistakes *that are common in younger officers*."  Freeman 1997 Eval. Rpt. (emphasis added).  Inexperienced officers may make mistakes, but nothing in the

record indicates that Officer Freeman failed to correct this issue.  Notably, Officer Freeman received no ratings below "acceptable" on that same evaluation.

Officer Freeman's 1998 evaluation indicated that his performance had decreased in the areas of acceptance of feedback (a "3+") and knowledge of criminal statutes (a "4+") and stated "Off. Freeman has made some adjustments in these areas[,] and this will continued [sic] to be monitored.[6]"  Freeman 1998 Eval. Rpt.  But again, no evidence was introduced to show that Officer Freeman continued to have difficulties in these areas.  Furthermore, the evaluation report in question occurred twenty-one (21) months prior to the 2000 sergeant promotion.  Had Officer Freeman failed to improve, the plaintiff would surely have introduced more recent evidence from Officer Freeman's personnel file, rather than simply concluding that Officer Freeman suffered "serious lapses in judgment."  Pl. Memo ¶ IV.A.1.  Such a conclusory allegation, without further evidence to support it, is insufficient to create a question of material fact.  Podell, 112 F.3d at 101.

In contrast, plaintiff received two problem performance reports, two verbal reprimands, and a written reprimand in the two year period immediately preceding May, 1999.  The written

_____

[6] On a Quarterly Evaluation Report, a score of "4" is considered "Acceptable", and scores range from "1" ("Not Acceptable") to "7" ("Superior").  Freeman 1997 Eval. Rpt.

reprimand documented an incident that occurred only days before the 1999 promotion decisions were made and one year before the 2000 promotion decision was made.  His quarterly evaluation reports over the same time frame reflect difficulties in problem-solving and decision-making, and he was removed from a supervisory position after displaying judgment problems in front of recruits.  It is impossible to find that plaintiff's extensive history of disciplinary actions, judgment problems, and removal from a supervisory position is similar in all material respects to the single blemish introduced from Officer Medonis' record or to the two statements from Officer Freeman's evaluation reports. Cf. Shumway, 118 F.3d at 64 (holding that a plaintiff who had been fired because of a blatant and lengthy policy violation and disciplinary actions was not similarly situated to other employees that did not have similar negative records).

Notably, plaintiff was treated identically to Officer Mikan, the top-ranking officer on the 2000 promotional list.  Both officers were passed over for promotion in favor of Officer Freeman.  The record is silent as to Officer Mikan's other qualifications.  At the very least, however, they both ranked higher on the promotional list than did the candidate who was selected for promotion, and they were both passed over for promotion.

Officers Medonis and Freeman lacked plaintiff's disciplinary record, his record of poor judgment, and poor decision-making history.  Based on the evidence, the Court finds that plaintiff was not similarly situated with the Officers Medonis and Freeman.

### b.  Officers Bernard and Francis

Plaintiff contends that he is similarly situated to Officers Bernard and Francis, who were both promoted to Sergeant despite having received reprimands documenting lapses in judgment. However, plaintiff fails to show that they were similarly situated in all material respects.  Unlike Officers Bernard and Francis, plantiff received multiple verbal and written reprimands involving members of the public spanning several years, consistently received problematic evaluation reports indicating judgment issues, and had been removed from a supervisory position.

Officer Bernard received a written reprimand in 1992 for accidentally discharging a shotgun in the armory while cleaning it.  Written Reprimand, Nov. 3, 1992, Exh. 8 from Pl. R. 56 ["Bernard 1992 Repr."].  Officer Bernard also received a written reprimand in 1987 for failing to report damage to a police cruiser after a minor accident that had occurred in 1984.[7]

---

[7] Officer Bernard had been suspended after the 1984 incident, which had occurred prior to Chief Searles' tenure as the Windsor Chief of Police.  At that time, Officer Bernard appealed the

Written Reprimand, Sept. 4, 1987, Exh. 8 from Pl. R. 56 ["Bernard 1984 Repr."].

There is no doubt that the accidental discharge of a weapon is a serious error.  But it occurred in the armory, away from potential harm to the public.  Plaintiff offers no other information to show that Officer Bernard's record indicated other judgment problems.  Plaintiff does not indicate whether Officer Bernard was promoted after the 1992 reprimand.  He does not provide any other evidence from Officer Bernard's record. Plaintiff does not indicate who recommended Officer Bernard for promotion or who made the final decision to promote.  Plaintiff does not even introduce evidence that Officer Bernard actually was promoted to Sergeant.  Plaintiff offers nothing more than two written reprimands that occurred an unspecified time period prior to the alleged promotion and asks that the Court conclude that he and Officer Bernard were similarly situated.  The Court is unpersuaded.

Plaintiff's record contains written and verbal reprimands that specifically relate to judgment problems that occurred when

---

suspension.  He was awaiting the results of his appeal when Chief Searles began working at the Department in 1987.  Chief Searles determined that a suspension would be counterproductive and substituted a written reprimand.  This reprimand, though issued and kept in the personnel department, was not placed in Officer Bernard's personnel file because the two year time period for retaining written reprimands under the CBA had elapsed.  Bernard 1984 Repr.

dealing with the public.  His evaluations detail problems in problem-solving and decision-making throughout the two-year period immediately preceding each promotional decision. Plaintiff was also removed from a supervisory role after a serious incident.  Plaintiff introduced nothing from Officer Bernard's record to show that his employment history contains similar incidents.  Although Officer Bernard's accidental discharge of a weapon was serious, he admitted responsibility for it, and there is no evidence that any other incident occurred. The Court finds that plaintiff is not similarly situated to Officer Bernard.

As to Officer Francis, the only evidence introduced by plaintiff was one written reprimand that documented an insubordination incident between Officer Francis and his supervisor.  Nothing in the record suggests that Officer Francis had an extensive negative employment history.  Plaintiff again fails to introduce evidence that he was similarly situated to Officer Francis.

Based on the evidence, the Court finds that plaintiff has failed to show that he was similarly situated to Officers Bernard and Francis because he did not demonstrate that either of them had the extensive history of reprimands and negative evaluations that he did, that either of them had been removed from a supervisory position, when they were promoted with respect to the

reprimands that they did receive, or that they were recommended and promoted by the same individual who was the decisionmaker in plaintiff's case.

### c.  Supervisory Employees

Plaintiff finally argues that some of his superiors have displayed poor judgment yet retained their command positions. Plaintiff introduced nothing more than his bald assertions to support these claims.  Even if he had introduced admissible evidence, however, plaintiff cannot be considered similarly situated to those employees because they did not share similar employment characteristics:  they did not hold the same job title, were not seeking promotion, and worked for different supervisors.  Thus, the Court finds that plaintiff is not similarly situated to the supervisory employees named in his complaint.

Because plaintiff has not identified any similarly situated employees who were treated differently than he was, he cannot prove the first element of a class of one equal protection claim, and that claim fails as a matter of law.[8]

---

[8] Defendants also argue that plaintiff has failed to make out a gender discrimination claim.  Def. Memo. at 18.  Plaintiff admits that he was not denied any promotions based on his race or his gender.  Pl. R. 56 ¶ A.1.78-79.  The Court agrees that no gender or race-based discrimination claim has been made in plaintiff's complaint.

2.  <u>The Department had a rational basis for not promoting</u>
<u>plaintiff.</u>

Even if the Court accepted plaintiff's argument that he is
similarly situated to officers who were promoted, his claim still
fails because the Court finds that defendants had a rational
basis for not promoting him.

The Second Circuit has held that a government body lacks
rational basis only when it acts "with no legitimate reason for
its decision." <u>Harlen Assoc.</u>, 273 F.3d at 500.  "As long as
there is any reasonably conceivable state of facts that could
provide a rational basis for [a] . . . decision," the Court will
not modify it.  <u>Mocchio v. N.Y. State Office of Court Admin.</u>, 95
F.3d 195, 201 (2d Cir. 1996).

Extensive records, as well as Chief Searles' testimony,
indicate that plaintiff's performance was inconsistent, at best,
and showed repeated judgment and decision-making problems.  Scant
days before the 1999 promotional decision was made, plaintiff was
reprimanded for leaving his assigned post without notifying his
supervisor in a situation where his judgment was described as
"troubling."  1999 Reprimand.

Plaintiff exaggerates his record by stating that he was
rated superior in problem-solving/decision-making on his 2000
evaluation report and throughout 1997.  Pl. R. 56 ¶ A.1.25.  In

31

October, 2000, plaintiff received a score of "5" in problem-solving/decision-making.  Quarterly Evaluation Report, Oct., 2000, Exh. 3 from Pl. R. 56.  A "7" is "superior."  A "5" is not. Id.  The Court notes that plaintiff introduced no evaluations in which he had been rated superior in any category.  See Exh. 1-3 from Pl. R. 56.

Finally, plaintiff claims that many reviews "state that he should be considered for promotion for patrol supervisor and instructor/trainer duties."  Pl. R. 56 ¶ A.1.24.  Plaintiff mis-states the record.  The language on plaintiff's Quarterly Evaluation Reports reads, "Officer shows attributes for future assignment or promotion in the following areas:," followed by the words "Sergeant," "patrol supervisor," or "instructor/trainer" on various evaluations.  See Exh. 1-3 from Pl. R. 56.  It does not say that that plaintiff should be considered for promotion in any of those areas.  Id.

Plaintiff appears to have closed his eyes to the negative aspects of his work record and minimized his recurring history of judgment problems.  Plaintiff may have improved his performance since the 1999 and 2000 promotion decisions.  But it is clear that the record that existed when those decisions were made contained an extensive history of performance problems that supports the decisions not to promote him.

It is inherently reasonable for a police department to refuse to promote an individual who displays problems with judgment and decision-making ability, particularly when those problems recur, as they did in this case. Although having every opportunity, both at the time of the promotions and in briefing this motion, plaintiff did not present any evidence challenging defendants' reason for not promoting him. While plaintiff did disagree with the Department's analysis of his shortcomings, such conclusory allegations are insufficient to survive summary judgment. Where the Department has articulated a legitimate, rational reason for its decision, the Court is not empowered to second-guess it. See Bizarro v. Miranda, 394 F.3d 82, 89 (2d Cir. 2005) (holding that equal protection claims under Olech focus on whether an official's conduct has a rational basis, not whether that conduct is "correct[]").

The Court finds that plaintiff did not show that he was treated differently from others similarly situated, and defendants articulated a rational basis for their actions. Plaintiff's Equal Protection claim fails as a matter of law, and defendant's Motion for Summary Judgment, as to Count One, is **GRANTED**.[9]

---

[9] Defendants argue in the alternative that even if Plaintiff's equal protection rights were violated, Defendants are entitled to qualified immunity as to the equal protection claims against them in their individual capacity, and that liability cannot be imputed to them in their official capacities. Because the Court

C.  The Due Process Claim

In Count Two of his Complaint, plaintiff alleges that he was deprived of a "fair and meaningful opportunity to be heard" when "the defendants denied him the promotion to [Sergeant][10] that he was entitled to."  Compl., Count II, ¶¶ 3-4.  Specifically, plaintiff argues that Chief Searles engaged in an arbitrary decision-making process, "emphasiz[ing] or ignor[ing] aspects of an employee's background at will."  Pl. Memo., § IV.B.  Plaintiff asserts that the denial of a promotion to the position of Sergeant was in violation of his Fourteenth Amendment right to Due Process, pursuant to 42 U.S.C. § 1983.  Id. at ¶ 5.

The Due Process Clause of the Fourteenth Amendment requires that a person be afforded notice and opportunity to be heard prior to being deprived of a constitutionally protected liberty or property interest.  U.S. Const., amend. XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 569-70 n.7 (1972).  Not every property interest, however, is protected by due process.  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d Cir. 1993); accord Barton v. City of Bristol, 294 F. Supp. 2d 184, 196

_____
holds that Plaintiff has not proven the elements of a "class of one" equal protection claim, the Court declines to reach this issue.
[10] See supra, note 1.

(D. Conn. 2003). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577.

The U.S. Court of Appeals for the Second Circuit has held that where a public official retains broad discretionary authority to select eligible candidates for promotion, candidates who are not selected "[do] not possess any mandated right to appointment or any other legally protectible interest." McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (internal citations and quotations omitted). In McMenemy, the chief of the Rochester fire department had promised the plaintiff that he would be promoted. Id. at 281. The chief did not do so. Id.. Instead, he granted the promotion to a person who ranked lower on the civil service list than the plaintiff. Id. at 282. Under the applicable statute, the City retained broad discretion over promotions. Id. Given the broad discretionary powers retained by the City, the Court held that the plaintiff did not have a property interest in a promotion, since the Chief was free to exercise discretion and choose another candidate. Id. See also Looby v. City of Hartford, 152 F. Supp.2d 181, 190 (D. Conn. 2001)(holding that where a fire chief is granted discretion to select which candidate gets promoted from an eligible list, a

plaintiff who is not selected for promotion has no "cognizable property right to promotion.").

In this case, it is clear that plaintiff does not have a protected property interest in a promotion to Sergeant. Similar to the circumstances in McMenemy, promotions for the Town's Police Department are governed by the CBA, which expressly grants the Chief the discretion to recommend candidates from the promotional list. CBA, Art. I, Sect. 1.1, Exh. C from Searles Dep.; Pl. Dep., pp. 52-53. In 1996, the State Board of Mediation and Arbitration also held that the decision to select a candidate from the promotional list is "solely within [the Chief's] discretion." Town of Windsor and IBPO, Local 328, Case No. 9596-A-1222, Nov. 8, 1996 (Conn. Dept. of Labor, State Bd. of Med. and Arb.) (holding that it was "solely within [the Chief's or Town Manager's] discretion" to deny a promotion to a Town of Windsor police officer who made the promotional list).

Where, as here, the broad discretionary powers of an official to select candidates for promotion are clearly specified, a candidate cannot legitimately claim that he is entitled to a promotion. Plaintiff was eligible for a promotion, and he may have expected to receive one. But an expectation does not translate to an entitlement that is protected by the force of law. Plaintiff did not possess a protected property interest in

a promotion, and, therefore, his due process claim fails as a matter of law.

Defendant's motion for summary judgment is **GRANTED** as to Count Two of plaintiff's Complaint.


IV.  CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is **GRANTED** as to Counts One and Two of plaintiff's complaint.  Plaintiff's claim for Intentional Infliction of Emotional Distress, is **WITHDRAWN**.  Plaintiff shall file a stipulation withdrawing his Intentional Infliction of Emotional Distress claim within twenty (20) days of the entry of this order.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order.  Failure to object within ten (10) days may preclude appellate review.  See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules of the United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989) (per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

Dated at Bridgeport, this 4th day of August, 2006.

_____/s/_____

Holly B. Fitzsimmons
United States Magistrate Judge